Bundy, Receiver, *et al. v.* The Town of Monticello.

No. 9790.

BUNDY, RECEIVER, ET AL. *v.* THE TOWN OF MONTICELLO.

TOWN BONDS.— *Bank Deposit of Proceeds of Sale.— Notice of Ownership.—* Where a trustee of a town has sold its bonds, and has deposited in a bank, with notice, the money received for them, or money substituted for such as was received, the town may recover from the bank such money.

SAME.—*Trust and Trustee.—Fiduciary Deposit.—Descriptio Personæ.—*Where such money is deposited to the credit of J. C. W., "trustee," the character of the deposit is notice to the bank that such money is impressed with a trust, and the bank can not, as against the town, apply such money upon a debt of the trustee to the bank.

SAME.—*Agent.—Bond for Performance of Duty.—Town Trustee.*—An agent of a town who is authorized to sell its bonds, and who executes a bond to secure the discharge of his duties, is not by reason thereof the owner of the money arising from the sale of such bonds, but the same belongs to the town.

SAME.—*Suit on Bond for Money and Against Bank for Deposit.—*A suit upon such bond to recover such portion of the money for which said bonds sold as can not be traced is not inconsistent with a suit against a bank to recover such portion of the fund as can be traced to the bank.

SAME.—*Recovery of Trust Fund from Trustee and Others Having Notice.—*A trust fund, or money substituted for such fund, may be recovered from the trustee and all persons having notice of such trust into whose hands such fund may come.

From the Tippecanoe Circuit Court.

| | |
|---|---|
| 84 | 119 |
| 136 | 316 |
| 84 | 119 |
| 149 | 143 |
| 149 | 547 |
| 149 | 549 |
| 149 | 551 |
| 84 | 119 |
| 165 | 606 |

Bundy, Receiver, *et al. v.* The Town of Monticello.

*J. H. Mellett, E. H. Bundy, J. Applegate, R. C. Gregory* and *W. B. Gregory,* for appellants.

*M. M. Sill, T. F. Palmer, J. A. Stein, G. W. Collins, H. P. Owens* and *W. E. Uhl,* for appellee.

BEST, C.—The following abstract of this case has been furnished by the parties:

" This was a suit by the appellee against the appellants to recover certain moneys claimed to belong to the former, deposited in the First National Bank of Monticello. The complaint charges that on, etc., one Joseph C. Wilson, who was then one of the board of trustees of said town, and a duly authorized agent of said town, deposited in said National Bank of Monticello, Indiana, for and on behalf of said plaintiff (the appellee), the sum of $11,000, which said sum of money was the property of the said town, and was so deposited by said Wilson as trustee, as aforesaid, and afterward, to wit, on, etc., the said First National Bank of Monticello, Indiana, suspended payment, and refused to pay said sum of money, or any part thereof, to the appellee; that at the time of said suspension of payment by said bank there remained in said bank of said sum of $11,000 belonging to said plaintiff (the appellee), the sum of $9,500, which was yet due and remained unpaid; that on, etc., the defendant Martin L. Bundy (one of the appellants) was duly and legally appointed the receiver for said bank, and qualified as such receiver, and took possession of the assets of said bank, with all the books, moneys, rights, credits and effects thereof, and proceeded to the settlement and discharge of all liabilities of said bank except the liability of said bank to the appellee for said sum of $9,500 due the appellee by said bank, as aforesaid; that the defendant Bundy (one of the appellants), as such receiver, has declared a dividend of thirty per centum in favor of the creditors of said bank, and has proceeded to pay said dividend to all of said creditors except the appellee, to whom he has failed and refused to pay said dividend, or any part thereof,

and has failed and refused to recognize the appellee as one of the creditors of said bank. Wherefore appellee prays that she may be recognized as one of the creditors of said bank, and that she have judgment for $10,000 against the defendant Bundy, as such receiver, and said First National Bank, to be paid out of the assets of said bank in his hands as such receiver, and that she share equally with the other creditors of said bank in the distribution of its assets, and for all proper relief.

" The appellants answered:

" 1. General denial.

" 2. That whilst said money mentioned in the complaint was on deposit in said bank, and under the control of the said Joseph C. Wilson, and when no trust attached to said money in favor of the appellee, to wit, on, etc., the said Joseph C. Wilson was liable to said bank in a sum much larger than the sum mentioned in the complaint, for money which had before that time come into the hands of said Joseph C. Wilson, as the president of said bank, which had been by him converted to his own use, and for which he was liable to account to said bank, having received the same in his relation to said bank as its president, said money so converted having belonged to said bank; the said Joseph C. Wilson appropriated and ordered said money in the complaint mentioned to be applied to, and in discharge of, so much of his said liability to said bank for the money so converted by him as aforesaid, and on said day last aforesaid, executed a paper writing, of which the following is a copy, to wit:

"' *To A. D. Lynch, Receiver First National Bank, Monticello, Indiana:*

"'There is in the First National Bank of Monticello, Indiana, a deposit to my credit as 'J. C. Wilson, trustee,' $9,013. Should there be any legal demands against me as president of said bank, which have been omitted from the books of the bank, I direct the application of this sum, so far as is necessary, to their payment, next to the payment of any balance due the

bank from me as appears by its books at the time it passed
into the hands of a receiver.

"'August 5th, 1879.                        Jos. C. WILSON.'

"And delivered said paper writing to A. D. Lynch, who
was then and there the receiver of said bank, who recognized
the same as valid; and the appellant Bundy, the successor of
said Lynch, claims and asserts his right to appropriate said
money in the complaint mentioned in discharge of said liabil-
ity of said Joseph C. Wilson to the said bank.

"3. As to $4,800 mentioned in the complaint, the defend-
ants (the appellants) say, that of the money for which the ap-
pellee seeks recovery, the said sum of $4,800 was the proceeds
of a note executed by A. W. Reynolds to said bank, and by
said Joseph C. Wilson deposited in said bank as a part and
parcel of the sum sought to be recovered by the appellee; that
after said deposit in said bank, to wit, on, etc., the said Joseph
C. Wilson directed and ordered said money to be applied to,
and in discharge of, a liability to said bank for money wrong-
fully converted by him as president of said bank.

"To the second and third paragraphs of the answer the ap-
pellee filed reply—the general denial."

The case was submitted to the court on the following agreed
statement of facts, to wit:

"The defendant Martin L. Bundy was at the commence-
ment of this action, and still is, the receiver of the said First
National Bank of Monticello, and as such has refused to recog-
nize the validity of the claim set up in the complaint herein,
but claims that the plaintiff has no right, either at law or in
equity, to the money for which its action is brought.

"It is admitted that Joseph C. Wilson had been the presi-
dent of said bank up to the first day of April, 1879, at which
time he ceased to be such president; that said Joseph C. Wil-
son was one of the trustees of the town of Monticello, and a
duly authorized agent thereof, and as such agent he did, in
April, 1879, sell to Claypool & Stoddard, of Indianapolis,
Indiana, $14,300 of the bonds of said town, bearing seven

per cent. semi-annual interest, for the sum of $12,918.47; that said $12,918.47 was paid to said Wilson by said Claypool & Stoddard in the following manner, and at the several times named, to wit: On or about the 14th of April, 1879, said Claypool & Stoddard, by the direction of said Wilson, paid a draft drawn by G. A. Ives, of Chicago, Illinois, for $6,000; on the 14th day of April, 1879, said Claypool & Stoddard paid said Wilson, by their check on the First National Bank of Indianapolis, Indiana, the further sum of $5,000; on the 13th day of May, 1879, the said Claypool & Stoddard paid said Wilson, by their check on the First National Bank of Indianapolis, Indiana, the further sum of $1,840.30, and in a few days thereafter said Claypool & Stoddard made a settlement with said Wilson for the balance of said $12,918.47, amounting to $78.17.

"On the 27th day of May, 1879, there was standing on the books of the First National Bank of Monticello, Indiana, to the credit of Joseph C. Wilson, the sum of six thousand, six hundred and eighteen dollars and ten cents ($6,618.10), and on that day said Wilson checked on said bank for six thousand, two hundred dollars ($6,200), which was at the time placed to the credit of 'J. C. Wilson, trustee,' on the books of said bank, by his order. On the same day he borrowed $4,800 from A. W. Reynolds, which he paid also to his credit as trustee, as aforesaid; that after said $11,000 was so placed to the credit of the said 'J. C. Wilson, trustee,' as aforesaid, said Wilson continued to draw for his individual purposes from each of his credits on account in said bank, up to and including June 24th, 1879, at which time there remained of his private account with said bank the sum of thirty-five cents, and of his account as 'trustee' the sum of $9,013; that, on the 24th of June, 1879, the said Joseph C. Wilson left Monticello, and, about four days after, abandoned his residence in Monticello, Indiana, and removed to Canada, without the jurisdiction and territory of the State of Indiana and the United States, and

has continued to reside in said province of Canada ever since his removal aforesaid.

"That on the 5th day of August, 1879, the said Joseph C. Wilson executed the following order, to wit:

" ' *To A. D. Lynch, Receiver First National Bank, Monticello, Indiana:*

' " There is in the First National Bank of Monticello, Indiana, a deposit to my credit as ' J. C. Wilson, trustee,' $9,013. Should there be any legal demands against me as president of said bank, which have been omitted from the books of the bank, I direct the application of this sum, so far as is necessary, to their payment, next to the payment of any balance due the bank from me as appears by its books at the time it passed into the hands of a receiver.        Jos. C. WILSON.

" 'August 5th, 1879.'

"That said A. D. Lynch, mentioned in last named order, was at that time in the control of said bank as the receiver thereof; that on the same day said order was delivered to said Lynch, said Lynch resigned and delivered said order to the defendant Martin L. Bundy, his successor in said receivership; that said Lynch did not act upon said order so far as to make the entries of such appropriation, but recognized the validity thereof; that at the time of the delivery of said order to said Lynch there existed a liability of said Joseph C. Wilson, for and on account of the matters embraced and intended to be embraced in said order, to the First National Bank of Monticello, for a sum exceeding that covered by said order, and said liability still exists, subject only to the application of the sum covered by said order, if, under the law and facts, it should be so applied; that the defendant Bundy is not only willing, but claims the right under said order, to apply said money on said liability of said Wilson to said bank of which he is the receiver, under said order, and in view of such liability and the said act of his predecessor.

"It is further admitted that said J. C. Wilson was duly and legally appointed agent of said town of Monticello, to sell

certain bonds of said town, and as such agent received the bonds of said town to an amount aggregating the sum of $21,000; that said appointment as such agent was made on the 13th day of May, 1878, and on or about the 20th day of May, 1878, two hundred and ten bonds of the said town of Monticello, of the denomination of $100 each, with coupons attached, said bonds bearing semi-annual interest at the rate of seven per centum per annum in gold, and aggregating the said sum of $21,000, were delivered to said Joseph C. Wilson as such agent, for negotiation and sale; that on the 7th day of January, 1879, the said Joseph C. Wilson reported to the board of trustees of said town that he had sold of said bonds to the amount of $2,100, at ninety-five cents on the dollar, out of which amount he had paid the sum of $552, and that no other report was ever made by said Wilson of the sale of said bonds; nor were any of said bonds ever returned by him as such agent, or otherwise, to said town, nor were the proceeds of any sales made by him of said bonds ever paid over to said town other than the $552 so reported by him as aforesaid; that as such agent said Joseph C. Wilson executed a bond with sureties, payable to said plaintiff, conditioned for the faithful performance of his duties as such agent, and the payment over to said town of all such sums as might come to his hands as such agent; and that, under his authority as such agent, he made said sale of said bonds and received the proceeds thereof as stated above in this agreed statements of facts, and that before the commencement of this suit the town of Monticello prosecuted to final judgment, on the 25th day of June, 1880, an action on said bond, but no money has ever been paid on said judgment, nor is there any probability of any money being realized by said plaintiff thereon.

"It is further admitted that said Joseph C. Wilson gave bond and personal security as president of said bank, conditioned for the faithful performance of his duties as such president, and the sureties on said last named bond are insisting

and demanding the application of said money so standing to the credit of ʻJ. C. Wilson, trustee,ʼ on the books of the bank and embraced in said order to A. D. Lynch, receiver of said bank, above set out, to his liabilities as president of said bank to said bank.

"It is further admitted that a suit is now pending in the Circuit Court of the United States for the district of Indiana, upon the bond of Joseph C. Wilson and his sureties as aforesaid, as president of said bank aforesaid, which suit was instituted by M. L. Bundy, receiver of said bank and one of the defendants herein, prior to the commencement of this action.

"It is further admitted that on the 25th day of September, 1879, the town of Monticello, by her board of trustees, passed the following resolution, which was at the time entered of record by the clerk of said board, to wit:

"ʻ*Resolved*, That the president of the board of trustees be and hereby is directed to serve upon M. L. Bundy, receiver of the First National Bank of Monticello, Indiana, and also upon George W. Robertson, president of said bank, the following notice, signed by the president of this board and the clerk of said town, and attested by the corporate seal of said town, to wit: By the direction and authority of the board of trustees of the town of Monticello, Indiana, you are hereby notified that the town of Monticello claims that all moneys on general deposit in the First National Bank of Monticello, Indiana, of which you are receiver, in the name of " Joseph C. Wilson, trustee," were at the time of the suspension of payment of said bank, and still are, the funds and property of said town, and you are hereby notified not to pay any portion of said deposit to any person or persons other than to the town of Monticello or its authorized agent. Said town furthermore claims that all said deposits made by said Wilson in said bank, either in his individual name or as trustee, were made with the money and funds belonging to said town, and which he wrongfully appropriated to his own use, and that said town is alone entitled to receive payment on account of

the same. You are therefore hereby required to account to and pay over to said town, whenever you may lawfully do so, all moneys so on deposit in said bank.

"'ALPHEUS BENNETT, President.

"'Attest: T. BOFINGER, Secretary.'

"And that a copy of the foregoing resolution and notice, duly signed and attested, was served on the defendants Martin L. Bundy, receiver, and George W. Robertson, president, as aforesaid, on the 26th day of September, 1879.

"It is further agreed, that on the 20th day of May, 1878, said Wilson sold to Augustus T. Post bonds of the town of Monticello, for the sum of $6,700, and then received the money therefor."

The court upon this evidence found for the appellee in the sum of $6,988.43. A motion for a new trial, because the finding was not sustained by sufficient evidence and was contrary to law, was overruled, and a judgment rendered upon the finding.

From this judgment the appellants appeal, and assign as error the order of the court in overruling the motion for a new trial.

The appellants insist that the judgment is erroneous, because the facts agreed upon do not show any title in the appellee to the fund in dispute. The facts are, that Joseph C. Wilson was authorized to and did sell the bonds of the appellee for $19,618.47; $6,700 of this sum was received by him on the 20th of May, 1878, and the residue was paid to him in the manner stated, during the months of April and May, 1879. On the 27th day of May, 1879, Wilson deposited in the First National Bank of Monticello, $6,200 to the credit of "J. C. Wilson, trustee." The money so deposited had been by him deposited to his general credit before, but whether or not this money had been received by him in payment of the bonds sold by him, does not appear. If it had been, the fact that he placed it to his own credit did not change the character of the fund. *Central National Bank* v. *Connecticut Mutual Life Ins. Co.*, 104 U. S. 54.

It does not appear that it had been received for the bonds, but it was deposited to the credit of "J. C. Wilson, trustee," and the appellee insists, that if this money was not received for the bonds, the substitution of it for such as may have been received impressed it with the trust.

The sale of the bonds and the reception of the money created the relation of trustee and *cestui que trust* between Wilson and the appellee. The money received by him belonged to the appellee, and it was his duty to pay it. The latter was entitled to the identical money received, or to any property into which it had been converted. Wherever a trust fund has been wrongfully converted into any other property, if its identity can be traced, it will be held in its new form. "The general proposition, which is maintained both at law and in equity upon this subject, is, that if any property, in its original state and form, is covered with a trust in favor of the principal, no change of that state and form can divest it of such trust, or give the agent or trustee converting it, or those who represent him in right (not being *bona fide* purchasers for a valuable consideration without notice), any more valid claim in respect to it, than they respectively had before such change." 2 Story Eq. Jur., section 1258.

The principle that enables a *cestui que trust* to follow the trust fund into a different kind of property, authorizes and enables the *cestui que trust* to seize upon and hold money substituted by the trustee for other money held as a trust fund.

In *Van Alen* v. *American National Bank*, 52 N. Y. 1, this precise question arose and was decided. Agents had sold bonds for their principal, received a check in payment and applied it to their own use. Immediately they deposited money in the bank for their principal, and the question arose as between the bank and the principal, whether the money deposited was impressed with the trust. The bank insisted that it was not, because the money deposited was not received for the bonds. The court, after saying that the proceeds of a trust fund may be followed and recovered, said: "It is claimed, however,

that this principle is not applicable because the identical money for which the bonds were sold was not deposited. This objection would be fatal if there had in fact been no substitution of other money for the proceeds of the bonds. * * The point made is this: A. having $100, the proceeds of a sale of property of B., intends to place it in a repository and keep it for B., and instead of putting the identical bank bills in the designated place substitutes others of the same amount and keeps them for B. as such proceeds, can there be a doubt that the $100 thus substituted would occupy the same position as the particular bills obtained for the property, and that they would be impressed with the same trust? Suppose Van Alen & Rice had got the check cashed by a third person and deposited the money, it would of course be regarded as the proceeds of the check, and belong to the plaintiff as effectually as the check itself. Does it make any difference whether the money was obtained from a third person upon the check or from the safe of Van Alen & Rice? In either case the money is the proceeds of the check and stands in lieu of it."

So, in this case, it was immaterial whether the money deposited arose from the sale of the bonds or from some other source, as, in either case, it was the proceeds of the bonds and was impressed with the trust after it had been set aside as such fund. If, then, the money deposited was deposited as the money of the appellee, the fact that it is not the money received for the bonds forms no obstacle to its recovery.

Did it belong to the appellee? Wilson was the trustee of the appellee; he sold the bonds, received the money, and afterwards deposited money in the bank to the credit of himself as trustee. It did not appear that he was the trustee of any other person, or that he had control of any other trust fund. Upon these facts the court found that the fund in question was the money of the appellee, and we think the facts agreed upon justified the conclusion.

The fact being established that the fund in question be-

longed to the appellee, it can be recovered from Wilson, the trustee, and all other persons having notice of the trust.

Did the bank have such notice? On the 5th day of August, 1879, Wilson gave the receiver of the bank an order to apply the sum so deposited to his credit, as trustee, upon any sum that he owed the bank. At the time he owed the bank a larger sum than the fund in question, and, while it did not actually apply such sum upon his indebtedness, we will treat the question under discussion precisely as though the application had been made. No notice, at this time, of the character of the fund had been given to the bank, other than such as was imported by the manner of the deposit. The fund was deposited to " J. C. Wilson, trustee," and the question arises whether this fact was notice of its character. We think it was. Wilson had an account with the bank from which the money in question was checked, and he then placed it to another account. The latter was unlike the former in this, that it was " J. C. Wilson, trustee." The word "trustee" meant something. It was not merely *descriptio personæ*, but was a description of the fund deposited. It imported the existence of a trust and was notice of the character of the fund. Besides, it was unusual and out of the ordinary course of business to open two accounts with the same person for the same fund, and this fact, coupled with the further fact that it was deposited by him as trustee, and not in the usual way, was sufficient notice that the fund was held in trust.

In *Shaw* v. *Spencer*, 100 Mass. 382, certain certificates of stock were endorsed " E. Carter, trustee," and were thus transferred to a holder for value, and without actual notice that they were held by Carter as a trustee. The question arose whether the word " trustee" imported notice to the holder, and the court held that it did, saying that " Unless the word ' trustee ' may be regarded as mere *descriptio personæ*, and rejected as a nullity, there was plain and actual notice of the existence of a trust of some description. * * * And that the mere use of the word ' trustee' in the assignment of a

mortgage and note imports the existence of a trust, and gives notice thereof to all into whose hands the instrument comes, has been expressly decided by this court."

There is no difference in principle between money held in trust and certificates of stock held in trust. If the word "trustee" is notice of the character of one, it is also of the other.

In *Central National. Bank* v. *Conn. Mutual Life Ins. Co.*, recently decided by the Supreme Court of the United States, a deposit was made in the name of "A. H. Dillon, Jr., Gen'l Ag't," and in a suit brought by the insurance company against the bank to recover the deposit, the court, after adverting to the fact that a bank account, designated as a trust fund, is different from other trust funds permanently invested, said : "But when against a bank account, designated as one kept by the depositor in a fiduciary character, the bank seeks to assert its lien as a banker for a personal obligation of the depositor, known to have been contracted for his private benefit, it must be held as having notice that the fund represented by the account is not the individual property of the depositor, if it is shown to consist, in whole or in part, of funds held by him in a trust relation."

These cases establish the proposition that the manner of making this deposit was notice to the bank of the character of the fund, and, since we have reached the conclusion that the fund belonged to the appellee, no reason exists why it should not have recovered, unless the recovery of a judgment upon the bond of Wilson precludes this recovery.

After Wilson was authorized to negotiate the bonds of the appellee he "executed a bond with sureties for the faithful performance of his duties as such agent, and the payment over to said town of all such sums as might come to his hands as such agent," and the appellee, with full knowledge of the facts, instituted a suit and recovered a judgment against Wilson and his sureties upon the bond, before the commencement of this suit. The appellants earnestly insist that the remedy upon the bond and a suit for the fund are inconsistent

remedies, and that the adoption of the former forever precludes the appellee from availing itself of the latter. In support of this position many authorities are cited. Without deciding that those remedies are or are not inconsistent, we will merely say that the facts agreed upon do not show that a judgment had been recovered for the fund in dispute in this case. The language of the agreed statement of facts is, " and that before the commencement of this suit the town of Monticello prosecuted to final judgment, on the 25th day of June, 1880, an action on said bond, but no money has ever been paid on said judgment, nor is there any probability of any money being realized by said plaintiff thereon." When the suit upon the bond was instituted is not stated ; but before the judgment was taken Wilson had received a large amount of money other than the fund in dispute in this case, and if such judgment was taken for such other money, the fact that it was taken upon the bond furnishes no reason why this action can not be maintained to recover the fund. Indeed, in such cases the remedies are consistent—one to recover such part of the money arising from a sale of the bonds as can be traced, and the other to recover a judgment for such part as can not be traced. For aught that the facts show, this may have been the case, and, as the contrary does not appear, we must presume such to have been the fact. The facts agreed upon do not show the amount of the judgment, nor that it was taken for the fund in question ; and we are, therefore, of opinion that the mere recovery of a judgment upon the bond does not preclude the appellee from maintaining this action.

The bond executed by Wilson and his sureties was executed by him as an agent, and not as an officer, and, for that reason, the money received by him did not become his money, but remained the money of his principal.

This disposes of all the questions discussed, and we are of opinion, upon the whole case, that the judgment should be affirmed.

PER CURIAM.—It is therefore ordered, upon the foregoing opinion, that the judgment be and it is hereby in all things affirmed, at the appellants' costs.

Opinion filed at the November term, 1881.
Petition for a rehearing overruled at the May term, 1882.