Board of Commissioners of Scott County *v.* McFadden, Executor.

---

## No. 9787.

BOARD OF COMMISSIONERS OF SCOTT COUNTY *v.* MCFADDEN, EXECUTOR.

CLERK OF CIRCUIT COURT.—*Successor in Office.*—*Duties and Liabilities as to Money Received.*—*Official Bond.*—*Deputy.*—It is the duty of the clerk of the circuit court in each county, at the expiration of his term of office, under section 5850, R. S. 1881, to pay over all moneys remaining in his hands as such clerk, to his successor in office, and, upon such payment, he will be released from liability therefor, and his successor and his sureties will be chargeable therewith; and the rule will not be dif-

Board of Commissioners of Scott County *v.* McFadden, Executor.

ferent where the successor was the deputy of the outgoing clerk, and, as such deputy, received the moneys in controversy, if it appear that he still had such moneys in his hands when he qualified as such successor and took possession of the office.

From the Scott Circuit Court.

*C. L. Jewett* and *H. E. Jewett*, for appellant.
*W. K. Marshall* and *W. Trulock*, for appellee.

HOWK, C. J.—This was a claim filed by the appellant against the appellee, as the executor of the last will of John H. McFadden, deceased, for the recovery of certain money alleged to have been received by the decedent, while clerk of the Scott Circuit Court, for the use of the appellant, and not accounted for. The cause was put at issue, and a trial by the court resulted in a finding for the appellee, the defendant below. Over appellant's motion for a new trial, and its exception saved, the court rendered judgment in accordance with its finding.

The only error assigned by appellant in this court is the overruling of his motion for a new trial; and in this motion the only causes assigned for such new trial were that the finding of the court was not sustained by sufficient evidence, and was contrary to law.

To the appellant's claim the appellee answered in two paragraphs, of which the first was a general denial. In the second paragraph of his answer the appellee alleged, in substance, that his testator, John H. McFadden, in his lifetime, fully paid to Newton M. Wilson, who was his successor in the office of the clerk of the Scott Circuit Court, all the moneys demanded of the testator's estate, in the appellant's claim against such estate. To this second paragraph of answer the appellant replied by a general denial.

The single question presented for our decision by the record of this cause, and the appellant's assignment of error thereon, may be thus stated: Is there legal evidence appearing in the record which tends to sustain the finding of the trial court on every material point? If this question must be answered in the affirmative, as we think it must, then the

judgment below must be affirmed, even though it might seem to us that a different conclusion might have been reached. The evidence is properly in the record, and there is but little, if any, conflict therein. It showed that appellee's testator was the clerk of the court below from July 29th, 1875, until March 19th, 1877, during all which time Newton M. Wilson, as his deputy, had almost the entire charge and control of the clerk's office and the business thereof; that his deputy, Wilson, was duly elected as his successor, and commissioned as such clerk for the term of four years from March 19th, 1877; and on that day qualified and entered upon the discharge of the duties of his office; and that, during the term of office of appellee's testator, the appellant had a judgment in the court below against Henry K. Wardle and others, on which the judgment defendants made payments into the clerk's office amounting in the aggregate to the sum of $1,128.13, which payments constituted the claim in suit in this case.

On the trial of the cause Newton M. Wilson testified as a witness for appellee, in substance, as follows:

"I was clerk of the Scott Circuit Court from the 19th day of March, 1877; before that time I was deputy clerk under John H. McFadden; payments were made on the judgment of the Commissioners of Scott County *vs.* Henry K. Wardle and others, by various persons called 'the bondsmen'; Mr. McFadden was never in the office when any payments were made on this judgment, so far as I can remember; payments were made partly in money and partly in county orders; I had the money and the orders in my possession after March 11th, 1877; I had it all in my possession after I became clerk; I paid $350 to Charles L. Jewett, attorney for plaintiff, after I became clerk, and he receipted for it on the judgment docket; I paid him in county orders; C. L. Jewett demanded the money and orders of me before this suit was brought; I paid him the $350 on the 11th of September, 1879, by order of the board of commissioners of Scott county; I collected money and county orders on this judgment after my own term

as clerk began; none of the money or orders collected by me while deputy clerk ever went into the hands of John H. Mc-Fadden personally; I received what orders and money were paid me on the judgment during McFadden's time as clerk, as his deputy; did not enter any credit on the judgment at the time they were made as I recollect it; when my term began I still had the orders in my possession in a safe; the safe was my private property; I also had the money, though I may have used some of it in making change; don't think I had spent any of it; if I did not have the identical money I had the amount; if I paid out any in making change I held the proper amount; when my term of office began I made no settlement or adjustment of this matter with McFadden; what was in the safe remained there and what was in my pocket remained there; I made no settlement with McFadden as retiring clerk, nor with myself as his deputy; outside of the sum of $350 paid to Jewett, none of the money or orders have ever been paid to the plaintiff; I kept the safe in the clerk's office and the county orders in the safe; the safe was in the office while I was deputy clerk, bought with my own money and placed in the office as my own private property before this money and these orders were paid, and while I was deputy; I don't know how much of the money I kept in my pocket and in the safe; the orders I paid Mr. Jewett were some of the same ones that were paid to me by the bondsmen; I had not exchanged for others; I had not used the money paid to me to buy county orders; I do not know that I had the identical money which was paid to me on hand when I became clerk; I may have paid out some of it or given it out in making change; I carried the money the same as I carried other money; * * I had the amount of money I had been paid; that's as far as I can say; I do not remember of paying out any of the identical money until I became clerk; after my term as clerk began I collected more money and more county orders on the judgment; I do not know whether the orders I paid Mr. Jewett were the same orders paid to me

as deputy clerk while McFadden was clerk or not; I had the money and orders in my possession to the amount; McFadden took no part in the management of the office while clerk; I had entire control of the office as his deputy; when I became clerk the money and orders were in my possession as deputy and I kept them."

Upon the evidence of Wilson alone it seems to us that the trial court was fully authorized to find and decide that he only was liable to the appellant for the money sued for, and that the estate of his predecessor in office, upon the facts testified to was not liable therefor. If the money and orders mentioned in Wilson's evidence never went into the personal possession of his predecessor in office, but were in the possession of Wilson as clerk, at and after the commencement of his term of office, he became as fully liable therefor, and his predecessor became as fully discharged from such liability, as would have been the case if his predecessor had formally turned over and paid to him, as such clerk, such money and orders. Where moneys are paid to and received by the clerk of the court on judgments therein rendered, the clerk is liable therefor in his official capacity; and, therefore, at the expiration of his term of office, if such moneys have not been paid to the person who is entitled to demand and receive the same, it is his duty, we think, to pay over and deliver such moneys to his successor in office. For moneys thus received from the outgoing clerk, his successor and his sureties, under a fair construction of sec. 5850, R. S. 1881, will be liable on his official bond to the person or persons entitled thereto, to the same extent as they would have been liable if the judgment defendants had paid such moneys directly to such successor. It can make but little difference in the legal aspects of the case, as it seems to us, whether the outgoing clerk formally pays such moneys to his successor, or the successor having already, as in this case, the possession of such moneys, qualifies and takes possession of the office. In the latter case, immediately upon taking

possession of his office as clerk, Wilson became lawfully en-
titled to the possession of the money and orders then in his
hands, as against his predecessor; and in such case it must
be that the latter was discharged from liability therefor. The
motion for a new trial was correctly overruled.

. The judgment is affirmed with costs.