### SHEPARD, TRUSTEE, *v.* THE MERIDIAN NATIONAL BANK ET AL.

[No. 17,783. · Filed Nov. 23, 1897.  Rehearing denied Feb. 18, 1898.]

APPEAL AND ERROR.—*Record.*—*Motions.*—No question is presented on appeal as to the ruling of the court on a motion made by defendant to require plaintiff to elect whether he would sue as trustee or receiver, where such motion was not brought into the record by bill of exceptions or by order of court.  *p. 538.*

PRACTICE.—*Harmless Error.*—An order of court requiring a plaintiff to elect whether he would sue as trustee or receiver was immaterial and harmless, if erroneous, where the rights of recovery were the same in either capacity.  *pp. 538, 539.*

TRUSTS.—*Absconding Officer.*—*Court may Appoint Trustee to Administer Trust Funds.*—The court may, under the provisions of section 3418, Burns' R. S. 1894 (2996, R. S. 1881), appoint a trustee to take charge of trust funds abandoned by an absconding county clerk

and collect and administer them in the interest of the beneficiaries entitled to them in the absence of such clerk or of anyone authorized and willing to act for him. *pp. 539-542.*

TRUSTS.—*Action to Recover Funds Belonging to Cestuis Que Trust.*— An action may be maintained by a trustee appointed by the court to take charge of trust funds abandoned by a county clerk, to recover funds embezzled by such clerk without making the *cestuis que trust* plaintiffs in such action. *pp. 542-544.*

SAME.—*Power of Trustee to Maintain Action to Set Aside Fraudulent Transfer of Assets.*—One appointed by the court to take charge of trust funds abandoned by an absconding county clerk, and administer same for the benefit of the *cestuis que trust*, may maintain an action to set aside a transfer of assets made by such clerk in fraud of the trust, the transferee having knowledge of the trust and participating in the fraud. *pp. 543, 544.*

SAME.—*Recovery of Funds Misapplied by Trustee.—Officers.*—Funds held by a county clerk, as such officer, and wrongfully applied to the payment of his individual liabilities, the creditor having knowledge of the trust and knowing that the money so applied was trust funds, may be recovered in an action by a trustee for the use and benefit of the *cestuis que trust. pp. 544-552.*

From the Marion Superior Court. *Reversed.*

*William A. Ketcham* and *Henry N. Spaan*, for appellant.

*Addison C. Harris* and *Frank Cutter*, for appellee.

HOWARD, C. J.—It is shown in appellant's complaint that on November 12, 1886, John E. Sullivan entered upon the duties of the office of clerk of the Marion Circuit Court, succeeding Moses G. McLain, who held that office for the four years ending on said day. Sullivan held the office until January 31, 1889, when he resigned, and the appellee John R. Wilson was appointed to succeed him, and was afterwards elected as his own successor. During the early period of Sullivan's incumbency of the office, his predecessor, McLain, paid to him moneys in custody of the clerk, belonging to insolvent and decedents' estates, and other trust funds, amounting to nearly $120,000; and Sullivan himself, during the time he held the office,

Shepard, Trustee, *v.* The Meridian National Bank *et al.*

received, in addition, about $75,000.00 of like trust funds. Previous to his election as clerk, Sullivan had been engaged in business, and had kept an account with the appellee national bank. On November 15, 1886, this account was overdrawn in the sum of $17,791.02. On that day McLain made his first payment of trust funds to Sullivan, giving him, as clerk, a check for $10,000.00 on the Indianapolis National Bank. In the body of this check the money was described as paid "on account of trust judgment and fees." Sullivan delivered this check, indorsed by him, to the appellee bank, and said appellee drew the money thereon from the Indianapolis National Bank, and credited the same on Sullivan's individual account, leaving the same still overdrawn. It is alleged that "At the time of receiving said check and crediting said Sullivan with the amount thereof, said Meridian National Bank well knew that said McLain had been the clerk of said court as the predecessor of said Sullivan, and that said Sullivan was then and there, the clerk of said court, and that said check was given to him in order to transfer to him, as such clerk, the sum of $10,000.00, which had theretofore been in the hands of said McLain, as such clerk, in trust for divers and sundry parties." Thereafter, on November 20, 1886, McLain delivered to Sullivan, as such clerk, his second check, being for $5,000.00, payable to the order of Sullivan as clerk, the payment being also designated in the body of the check as made "on account of trust and judgment funds and fees." On the endorsement and delivery of this check to the appellee bank said appellee opened an account with John E. Sullivan, clerk, delivered to him a pass-book therefor, and gave him credit upon the pass-book and upon his account as clerk for $4,000.00, but applied the remaining $1,000.00 of said check to the payment of the in-

Shepard, Trustee, *v.* The Meridian National Bank *et al.*

dividual indebtedness of Sullivan to the bank, knowing at the same time that said $1,000.00 was a part of the trust funds in the hands of Sullivan. Thereafter, on December 13, 1886, a third check for $653.10, drawn by McLain, as clerk, upon the Indianapolis National Bank, and reciting in the body of the check that it was given on account of "trust in asst. and estates (in F. & S.)," was given to Sullivan, and endorsed by him as clerk, and delivered to the appellee bank, and was by said appellee applied on Sullivan's personal debt to the bank, the bank at the same time knowing that said trust funds were not the individual or private property of the said Sullivan, but were in his hands as clerk, in trust for divers and sundry parties. Like allegations are continued in detail, showing the application by Sullivan, with the co-operation and knowledge of the appellee bank, of other trust funds in his hands as clerk, in payment of his personal obligations to the bank, and to other creditors who were paid through the bank, from said trust funds.

During Sullivan's continuance in office he was, besides, engaged in business for himself, in which occupation he also received large sums of money. And it is further alleged in the complaint, "that, by means of his earnings, borrowings, and other methods of obtaining money, although said Sullivan had during his continuance in office as such clerk misappropriated and embezzled, from time to time, very great sums of money, amounting in the aggregate to more than $150,000.00, he had succeeded in reducing the extent of his defalcation on the 29th day of January, 1889, to the sum of $47,993.84, as to which he was then, and has ever since been, and now is, a defaulter." The names of the particular persons for whom he received and to whom he failed to pay over this money, in number about 1,500, and the amount due each, are set out in an exhibit to the complaint.

Among the sums of money so misappropriated was $440, due to the State of Indiana; and it is alleged that the State, by its Attorney-General, on the 5th day of March, 1889, filed in the Marion Circuit Court "its certain complaint in the nature of a creditor's bill, in its own behalf and on behalf of all others similarly situated who should desire to participate therein and contribute to the expense of the litigation against the said Sullivan and others, asking, among other things, for judgment against Sullivan for the money so collected by him as clerk,  *  *  *  for the appointment of a receiver to collect the fees due to said Sullivan as such clerk that had not theretofore been collected, and for the appointment of a trustee as the successor of said Sullivan, in relation to the matters that had come to his hands as such clerk, and to recover the trust funds that had come to the hands of said Sullivan as such clerk, and had been used by him in the payment and discharge of his private indebtedness from the parties who had received the same, for the use and benefit of the parties entitled thereto, in such proportion as the court might adjudge. And such proceedings were had in said cause that thereafter, to wit, on the 6th day of March, 1889, this plaintiff was by said court duly appointed receiver of certain of the assets of said Sullivan, and was also appointed as a trustee as the successor of said Sullivan in the various trusts which had, by the statute in such cases made and provided, been imposed upon and confided in said Sullivan."

In the order of appointment, as set out in this complaint, it is declared, that the court "does hereby order, adjudge, and decree that Silas M. Shepard be, and he is hereby appointed as a receiver of this court, for the purpose of collecting and reducing to cash the rights, credits, choses in action named and described

herein, and also as trustee in the matters appertaining to the office of clerk of this court, with respect to the funds collected by said Sullivan as such clerk, as the successor in said trusts of said Sullivan, late clerk." Appellant is particularly directed in said order, amongst other things, "to institute and maintain actions against any and all persons whom he may have reasonable cause to believe have heretofore received from said Sullivan, as such clerk, trust funds that were then and there in his hands as such clerk, in payment of his individual indebtedness, or that were otherwise misappropriated by him."

It is further shown that the fees due Sullivan and collected or to be collected by the receiver will amount to not over $5,000.00, and will be totally inadequate to pay the liabilities of Sullivan as clerk. It is also made to appear that the sureties on Sullivan's official bond have been exhausted, leaving all the creditors except those who have obtained judgments on his bond wholly unpaid; that Sullivan has fled the country, and is wholly insolvent, and said creditors of said trust funds will be wholly remediless unless the funds misappropriated can be followed, and applied to the liquidation of their claims.

It is alleged that before the bringing of this action the appellant had applied to the appellee bank for an accounting of the trust funds of Sullivan so used by it, but the bank refused so to account, or to pay any of said funds to him. The appellant concludes his complaint, saying, therefore: "That a cause of action has accrued to him as such receiver and trustee, as the successor of said Sullivan in his various trusts, to compel the said defendant, the Meridian National Bank, to account and show what amount of trust funds it received from said Sullivan as such clerk that it applied to the payment and discharge of his in-

dividual and personal liabilities; that as to such funds it be adjudged and decreed to be a trustee of its own wrong for the misappropriations, embezzlements, and conversions of said Sullivan in which it participated, and of which it obtained the benefit; and plaintiff prays the court to decree accordingly and that he have judgment."

The appellee bank filed its motion to require the appellant to elect whether he would sue as receiver or as trustee, which motion was sustained by the court. This ruling is one of the alleged errors complained of by appellant, but, as the motion has not been brought into the record by bill of exceptions or otherwise, no question is presented on the ruling. Besides, we are of the opinion that appellant has suffered no harm by the action of the court. He elected to sue as trustee, and anything that he might be entitled to recover in any capacity he may recover in this action as trustee. He was appointed receiver to collect fees and other amounts due Sullivan, but not collected by him, and also trustee "with respect to the funds collected by said Sullivan as such clerk." It is not apparent, however, nor do counsel satisfactorily show, why appellant as receiver, had not authority to take possession, not only of funds due Sullivan, and not collected by him, but also of all trust funds to which Sullivan was entitled, whether he had collected such funds or not. It was but one appointment, and there was but one officer, whether he be called receiver or trustee, or both. As receiver he was trustee of all assets belonging to Sullivan as clerk, and there does not seem to have been sufficient reason at any time to distinguish between his duties as receiver and his duties as trustee. The error, however, if any, is, as we have seen, immaterial, for the reason that, whether styled receiver or trustee, appellant is before the court as the representative

of the trust estate, and to recover for the estate all that is due to it from any source.

Appellant afterwards, as receiver, brought another action against appellees, the complaint and the parties being identical, except that in the case here appealed the plaintiff was styled trustee, and in the other receiver. The court overruled a motion by the bank to require the appellant to elect as to which of said actions he would pursue. The two cases accordingly .went to judgment, and both have been appealed, the appeal in the receivership case was also decided at this term. See *Shepard, Rec., v. Meridian National Bank, ante,* 20.

Afterwards the appellee bank filed its demurrer to the complaint, for the reasons: "First, that the plaintiff has no legal capacity to sue; second, that the complaint does not state facts sufficient to constitute a cause of action against this defendant." This demurrer was sustained by the court, and the ruling so made presents the chief questions for our consideration.

It will hardly be doubted that John E. Sullivan, as clerk of the Marion Circuit Court, received the funds in controversy as in trust for the numerous beneficiaries for whom they were, under the law, paid to him. While the naked legal title was in him as custodian, the beneficial interest was in others. Whether paid to him by administrators, guardians, assignees or other trustees, such funds were, in each case, trust funds to be held by him for the real owners.

Some question is made as to whether, on the resignation and absconding of Sullivan, his successor in office, the appellee John R. Wilson, did not succeed to him as rightful custodian of the trust funds which had been in his hands. There is no doubt that Mr. Wilson would have been entitled to receipt for such

funds if they had been paid over to him by Sullivan, or by any one else in his place, and that, as such successor, he would thus have become liable on his bond for their safe keeping; and it would seem, therefore, that such succeeding clerk, as lawful custodian, might have brought suit to recover the funds. It was said by Howk, C. J., in *Board, etc.,* v. *McFadden,* 88 Ind. 333, that "Where moneys are paid to and received by the clerk of the court on judgments therein rendered, the clerk is liable therefor in his official capacity; and, therefore, at the expiration of his term of office, if such moneys have not been paid to the person who is entitled to demand and receive the same, it is his duty, we think, to pay over and deliver such moneys to his successor in office."

The question is, however, not controlling in this case. Whether or not Mr. Wilson might have brought suit to recover the trust funds lost by his predecessor, it is certain that he did not bring, or offer to bring, any such suit. He was made a party defendant in the suit brought by appellant, to answer as to any right or interest which he might have in the matter. In the complicated condition in which the affairs of the clerk's office were left by the delinquencies of his predecessor, it may have been thought better that the affairs in which Sullivan was himself concerned should be totally divorced from the administration of the affairs of any official afterwards in charge of the office.

But by operation of the statutes a trust had been created as to the misappropriated funds, and such trust a court of equity must protect and defend. Because the former clerk had fled the country, or because the present clerk did not see his way to take up the duties of the delinquent, the court would not, therefore, be helpless. As said in Tiffany and Bullard

Trusts and Trustees, 2: "It is a well settled principle in equity, that a trust once properly created shall never fail for want of a trustee. It is a rule in equity to which there is no exception, that a court of equity never wants a trustee. Therefore if a trust has been properly created and no trustee has been appointed, is incompetent, or has refused to accept, or has died, the trust shall not fail on that account." And in Underhill Trusts and Trustees, 406, the author says: "Where a trustee is a felon, or a bankrupt, and refuses to join in the appointment of a new trustee in his place, the court can and will remove him, and appoint another person if the *cestuis que trust* desire it; and a similar observation applies to a trustee who has become a lunatic, or has gone to reside permanently abroad or has absconded."

, The statutes are to the same effect. In section 3418, Burns' R. S. 1894 (2996, R. S. 1881), it is provided that, "If any trustee of any trust now existing shall be dead, or any trustee of a trust now or hereafter to be created shall die or for any cause refuse to act, the circuit court or the superior court of the proper county may fill the vacancy by appointment of some suitable person, who shall execute bond for the faithful performance of the duties of his trust, as hereinbefore provided." And in the succeeding section it is said: "Said trustee and the funds in his hands shall be at all times under the equitable control of the court having jurisdiction thereof for the preservation of the funds and carrying out the purposes of the trust.".

The court could not, of course, appoint a clerk to succeed Sullivan. That duty devolved, at first, upon the board of county commissioners, and then upon the people at the next general election. The court, however, in the absence of Sullivan, or of any one authorized and willing to act for him, did have, as we think,

the right to appoint some one to take charge of the trust funds abandoned by him, and to collect and administer them in the interest of the beneficiaries entitled to them.

The question is also raised as to whether the proper parties plaintiff here were not the beneficiaries themselves, and whether this trustee had a right to sue for them. The complaint shows that the beneficiaries are exceedingly numerous, being about 1,500; that sums due many of them are small in amount; and that it was, therefore, for many reasons, undesirable, if not impracticable, for suit to be brought in the names of all of them. The State of Indiana was one of the beneficiaries, and brought the action in its own name and for all the other beneficiaries, asking for the appointment of a receiver and trustee, as the most practicable and equitable method of proceding to recover the funds which had been in custody of the absconding clerk; and the court, on this petition, made the appointment.

In 2 Perry Trustees, section 885, the author says: "Where the parties in interest are so numerous that it is not possible or convenient to join all as plaintiffs, the court will allow a few *cestuis que trust* to sue in behalf of themselves and the others."

In 1 Pomeroy's Eq. Juris., section 255, it is said that a suit in equity may be brought, when, for example, "A number of persons have separate and distinct interests, but still united by some common tie, against one determined party, and their interests may perhaps be enforced by one equitable suit brought by all the persons joining as co-plaintiffs, or by one suing on behalf of himself and all the others, or even by one suing for himself alone."

"The grand principle which underlies the doctrine of equity in relation to parties," said the last named author in his work on Remedies and Remedial Rights,

section 247, "is, that every judicial controversy should, if possible, be ended in one litigation; that the decree pronounced in the single suit should determine all rights, interests, and claims, should ascertain and define all conflicting relations, and should forever settle all questions pertaining to the subject-matter."

It is finally urged against the right of this appellant to sue that at most he takes the place of the defaulting clerk, and can consequently maintain only such suits as such clerk could himself have maintained. Whether this contention could, in any respect be sustained as to appellant, as trustee for the creditors of the clerk may be questioned. On the contrary, appellant, as trustee for the creditors, the character in which he maintains this action, has every right as plaintiff which the creditors themselves would have if they had brought the action in their own names. But, even as receiver, appointed solely to protect the trust estate in the interest of the beneficiaries, it may be doubted whether he could not have maintained an action against the appellee bank to set aside the transfers made to such bank in fraud of the rights of such beneficiaries. In *State, ex rel.* v. *Sullivan*, 120 Ind. 197, to which counsel for appellees refer us, it was said that, while the general rule is that a receiver cannot have any right of action not vested in the debtor, yet that there are exceptions to the general rule, and one such exception is, that a receiver may maintain a suit to set aside a fraudulent conveyance. All that was decided in the case cited is that, as the debtor could not have brought a suit against himself, the receiver could not do what would be equivalent to bringing such suit; that is, could not bring suit upon the debtor's official bond. That, however, is a very different thing from bringing suit to set aside a fraudulent conveyance, or to set aside a transfer of assets made in

fraud of the trust estate, which the debtor, for the time, represented, the grantee or transferee having knowledge of the trust, and so participating in the fraud.

The right of a receiver to bring an action to set aside such a fraudulent transfer was clearly indicated in *Wallace* v. *Milligan*, 110 Ind. 498, Zollars, J., there saying: "Where an action might not have been maintained by the firm, it cannot be by the receiver, except when the firm may have been guilty of a fraud against its creditors. High, Rec. (2d ed.), sections 205, 315, 316." See further, 20 Am. and Eng. Enc. Law, 239, 240; also, 27 Am. and Eng. Enc. Law, 251, and cases in notes. In any case, the suit was properly brought in the name of the appellant as trustee, representing, as he does, the rights of the beneficiaries, as the real owners of the trust estate.

But the demurrer not only questions the capacity of the plaintiff to sue, but also denies that the complaint shows any liability on the part of the appellee bank, and this is the important question for our consideration. In the complaint, as epitomized by counsel for appellees, "The charge is that during his clerkship, the bank applied, with Sullivan's direction and consent, to Sullivan's individual debts, sums of money. The amount is not stated directly, but it is averred that certain amounts were applied to the payment of indebtedness due the bank, and certain other amounts were applied in payment of checks drawn by Sullivan arising out of his individual business, which, together, would seem to aggregate, as we add the figures given, to $97,443.71. It is charged that the bank 'participated and co-operated with and aided and abetted Sullivan in such illegal and tortious use of such funds;' that the bank knew that Sullivan was mingling the funds in his hands as clerk with his private funds, so

as to render it difficult, if not impossible, to distinguish the one from the other, or for any of the parties on whose account Sullivan, as such clerk, had received moneys, to specifically follow a specific fund belonging to or deposited by, or on account of, any particular party; of all which the bank had notice, and participated and co-operated for the purpose of concealing and covering up the fact of his improper use of such funds, and preventing the parties from recovering from it the moneys which it had received from Sullivan as clerk."

On this showing an acounting is demanded from the bank as to "what amount of the trust funds it received from said Sullivan as such clerk, that it applied to the payment and discharge of his individual and personal liabilities; that as to such funds it may be adjudged and decreed to be a trustee of its own wrong for the misappropriations, embezzlements, and conversions of said Sullivan, in which it participated, and of which it obtained the benefit."

Counsel cite many decisions of this court which hold, and rightfully, as we believe, that moneys entrusted to a public official as such, are not held by him as a mere agent, bailee, or trustee. For the safety of such funds, the officer is held to have a certain technical ownership of them, so that, in case they are lost, even without his fault, it is as if his own moneys were lost, and he is required to account for them as a debtor, and to pay them over to the person or persons entitled to receive them. But the beneficial interest in such funds is not in the public officer. As to such interest, he holds the funds in trust for the persons to whom he is required to pay them over, when rightfully demanded of him. The purpose of the decisions cited was not to lessen, but rather to increase, the responsi-

bility resting upon one who, by reason of his official station, is entrusted with the custody of funds not his own.

The spirit and purpose of such holding is well expressed in *Bocard*, v. *State, ex rel.*, 79 Ind. 270, one of the cases cited by counsel, where it was said, speaking of a township trustee's technical ownership of the township funds: "That he is thereby made responsible to the township for the money received by him to the same extent that a banker becomes responsible for money deposited with him on general account, and hence, to a much greater extent than if he were the mere agent, bailee, or trustee of the township, for the safe keeping and disbursement of the specific fund." See, also, *Rowley* v. *Fair*, 104 Ind. 189, and other authorities cited in *Winchester* v. *Veal*, 145 Ind. 506.

Another class of cases cited for appellees are, as we think, inapplicable to the questions here involved. The question here is not whether, because the appellee bank knew that the funds deposited by Sullivan were trust funds, it therefore follows that the deposit became a special and not a general one. The question here is whether the bank acted fraudulently in participating in Sullivan's misappropriation of funds. Appellant is not seeking to follow these trust funds on the claim that their payment to the bank constituted them a special deposit. Trust funds may be placed in a bank as a general deposit, quite the same as any other funds, and they become thereby, as in case of any general deposit, the property of the bank; the banker and the depositor assuming, as in other cases, the relation of debtor and creditor. It is true, also, of course, as held in *McLain* v. *Wallace*, 103 Ind. 562, that "the addition of the word 'clerk' to the name of a general depositor does not make the deposit a special one, nor does it change the liability of the bank."

In *Fletcher* v. *Sharp*, 108 Ind. 276, Judge Mitchell, a jurist referred to with deserved praise by the brilliant counsel for appellees, thus aptly distinguishes the points here discussed, and so clearly indicates the question for our decision: "When deposits are received, unless they are special deposits, they belong to the bank as a part of its general funds, and the relation of debtor and creditor arises between the bank and the depositor. This is equally so whether the deposit is of trust moneys, or funds which are impressed with no trust, provided the act of depositing is no misappropriation of the fund." And he adds, immediately, "If in receiving a trust fund a bank acted with knowledge that it was taking the fund in violation of the duty of the trustee, the rights of the *cestui que trust* might be different." Still more significant is the following from another part of the same opinion: "Nor does the case involve any question as to the right of the bank to appropriate the fund for an indebtedness due from the depositors, as in *Bundy* v. *Town of Monticello*, 84 Ind. 119." That, however, is the exact question here involved.

It is claimed by counsel for appellees that as the trust funds deposited by Sullivan became the property of the bank, as being a general, and not a special, deposit, therefore it was no fraud upon the beneficiaries of such funds to apply them upon the private debts and obligations of Sullivan himself. A statement of such a contention ought to be its own sufficient refutation. No doubt, as also said by Judge Mitchell, in *Lamb* v. *Morris*, 118 Ind. 179, "It is the right of the bank, in case the depositor becomes indebted to it, by note or otherwise, and the deposit is not specially applicable to a particular purpose, or there is no express agreement to the contrary, to apply a sufficient amount thereof to the payment of any debt due and

payable from the depositor to the bank.    *    *    *    *
This results from the right of set-off, which obtains
between persons occupying the relation of debtor and
creditor, and between whom there exists mutual de-
mands.   It is familiar law, however, that mutuality is
essential to the validity of a set-off, and that, in order
that one demand may be set off against another, both
must mutually exist between the same parties.   Ac-
cordingly, it is settled that a bank can claim no lien
upon the deposit of one partner, made on his separate
account, in order to apply it on a debt due from the
firm, nor can the joint and several note of three per-
sons be paid out of the individual deposit of one, un-
less he be the principal and the others sureties, or
unless it becomes necessary in order to do complete
equity or avoid irremediable injustice.   It follows
that, in the absence of a contract giving it the right to
do so, the bank could not have applied money due the
petitioner, as a depositor, to the payment of the note
upon which he was surety, any more than it could
have successfully pleaded the note as a set-off, in case
the petitioner had brought suit to recover the balance
due him on deposit."   Will it be said that there was
any mutuality between the money due upon the over-
drawn private account of Sullivan, or upon any of his
other personal obligations, on the one side, and the
trust funds deposited by him as clerk on the other,
the bank having at the same time two accounts open
with him, one the overdrawn account with him per-
sonally, and the other the trust account with him as
clerk? He stood to the bank, even as found upon its
own books, in two distinct capacities, quite the same
as if the business man and the clerk were two different
persons.

The quality of mutuality in set-off is quite analo-
gous to that of former adjudication, concerning which

it has been said, that "The thing demanded must be the same, the demand must be founded upon the same cause of action, the demand must be between the same parties and found by them against each other in the same quality." *Jones* v. *Vert*, 121 Ind. 142; *Kitts* v. *Willson*, 140 Ind. 604. The same person may be administrator, guardian, agent, or other trustee, and may also be doing business on his own account. If he mingles all his accounts, and makes a general deposit in bank, the bank, acting in good faith and without notice, might perhaps set-off any part of such deposit against any indebtedness of his to the bank. But, if the administrator makes one deposit, the guardian another, the agent a third, and the private business man a fourth, the bank, thus having knowledge of the nature of the several deposits, could not pay a debt to one account by drawing upon another, unless in some such exceptional cases as indicated in *Lamb* v. *Morris, supra.*

In *Bundy* v. *Town of Monticello, supra,* Joseph C. Wilson was one of the trustees of the town of Monticello, and was also president of the First National Bank of that town. He became indebted to the bank in a large amount, defaulted, and fled the country. After his default, he sent a written order to the receiver of the bank, directing him to apply the sum of $9,013.00, deposited to his credit as "J. C. Wilson, trustee," in payment of his personal obligations to the bank. The court found that Wilson was trustee of the town, that he sold the bonds of the town, received the money therefor, "and afterwards deposited money in the bank to the credit of himself as trustee. It did not appear that he was the trustee of any other person, or that he had control of any other trust fund." Upon these facts the trial court found that the fund in question was the money of the town, and this conclu-

sion was upheld on appeal to this court. It was further held on the appeal that, since the fund belonged to the town, it could be recovered from Wilson, the trustee, and from anyone else having possession of it with notice of the trust.

The court continued: "Did the bank have such notice? On the 5th day of August, 1879, Wilson gave the receiver of the bank an order to apply the sum so deposited to his credit, as trustee, upon any sum that he owed the bank. At the time he owed the bank a larger sum than the fund in question, and, while it did not actually apply such sum upon his indebtedness, we will treat the question under discussion precisely as though the application had been made. No notice, at this time, of the character of the fund had been given to the bank, other than such as was imported by the manner of the deposit. The fund was deposited to 'J. C. Wilson, trustee,' and the question arises whether this fact was notice of its character. We think it was. Wilson had an account with the bank from which the money in question was checked, and he then placed it to another account. The latter was unlike the former in this, that it was 'J. C. Wilson, trustee.' The word 'trustee' meant something. It was not merely *descriptio personae,* but was a description of the fund deposited. It imported the existence of a trust and was notice of the character of the fund. Besides, it was unusual and out of the ordinary course of business to open two accounts with the same person for the same fund, and this fact, coupled with the further fact that it was deposited by him as trustee, and not in the usual way, was sufficient notice that the fund was held in trust."

These words, with a change of names and dates and a substitution of "clerk of the circuit court" for "town trustee," might have been written for the case

at bar.   The cases are alike, even as to the two bank accounts, personal and fiduciary; and, as a recovery was decreed against the bank in favor of the beneficiary in the former case, there appears no reason why such a recovery should not be had in the latter.

In *Bundy* v. *Town of Monticello, supra*, the court cited from *National Bank* v. *Insurance Co.*, 104 U. S. 54, the following, also in point here:  "When against a bank account, designated as one kept by the depositor in a fiduciary character, the bank seeks to assert its lien as a banker for a personal obligation of the depositor, known to have been contracted for his private benefit, it must be held as having notice that the fund represented by the account is not the individual property of the depositor, if it is shown to consist, in whole or in part, of funds held by him in a trust relation."

"Equity," says Mr. Pomeroy, "impresses the trust upon the property in the hands of the transferee or purchaser, compels him to perform the trust if it be active, and to hold the property subject to the trust, and renders him liable for all the remedies which may be proper for enforcing the rights of the beneficiary. It is not necessary that such transferee or purchaser should be guilty of positive fraud, or should actually intend a violation of the trust obligation; it is sufficient that he acquires property upon which a trust is in fact impressed, and that he is not a *bona fide* purchaser for valuable consideration and without notice." 2 Pomeroy's Eq. Jur., section 1048.

In Underhill, Trusts and Trustees, 487, n. 3, it is said:  "Where a fund was standing to the account of two trustees in the books of some bankers, who had notice that it was a trust fund, and by the direction of the tenant for life only, they transferred it to his account, and thereby obtained payment of a debt due from him to them, it was held that the trustees might

sue the bankers to have the trust fund replaced." And in Hill, Trustees, *522, it is said: "If it can be actually proved by means of the checks or otherwise, that the payment was made with trust-money, that will unquestionably be the best evidence for this purpose." See, also, *Chandler* v. *Schoonover*, 14 Ind. 324; *Austin* v. *Willson's Executors*, 21 Ind. 252; *Wallace* v. *Brown*, 41 Ind. 436; *Bevis* v. *Heflin*, 63 Ind. 129; *Nugent* v. *Laduke*, 87 Ind. 482.

It is clear that the complaint was sufficient, and the court erred in sustaining the demurrer to it. Judgment reversed.