HON. R. C. WATTS, ASSOCIATE JUSTICE AND CHIEF JUSTICE.

HON. THOS. P. COTHRAN, ASSOCIATE JUSTICE

HON. J. HARDIN MARION, ASSOCIATE JUSTICE

HON. EUGENE S. BLEASE, ASSOCIATE JUSTICE

HON. JOHN G. STABLER, ASSOCIATE JUSTICE

HON. JESSE F. CARTER, ASSOCIATE JUSTICE

12306

PEURIFOY, RECEIVER, v. GAMBLE, RECEIVER

(142 S. E., 788)

1. BANKS AND BANKING—ASSETS OF INSOLVENT BANK ARE TRUST FUNDS IN HAND OF RECEIVER.—Assets of an insolvent bank are a trust fund in hands of the receiver, to be reduced to money and ratably distributed among all creditors.

2. BANKS AND BANKING—BANK MAY APPLY DEPOSIT OF INSOLVENT DEBTOR TO DEBT, AND DEBTOR, WHERE BANK IS INSOLVENT, MAY HAVE DEPOSIT APPLIED TO DEBT WHEN DEBTS ARE MUTUAL.—Ordinarily, a bank has a right to apply deposit of an insolvent debtor to payment of bank's claim against him, and one owing an insolvent bank has a right to have his deposit applied against such debt, provided debts are mutual ones existing between the same parties in the same right.

NOTE: On right of set-off as between debts due from bankrupt and claim of Trustee in Bankruptcy arising from transaction after bankruptcy, see annotation in 29 A. L. R., 623; 3 R. C. L., 647; 5 R. C. L. Supp., 194; 7 R. C. L. Supp., 101.

3. BANKS AND BANKING—RECEIVER OF INSOLVENT BANK, DEPOSITING FUNDS IN OTHER BANK ENTITLED TO DIVIDENDS, CANNOT, AFTER BANK'S FAILURE, OFFSET DIVIDENDS AGAINST DEPOSITS TO FULL EXTENT OF DEPOSITS.—Receiver of insolvent bank, having deposited funds with another bank having claim for deposit, and which subsequently failed, was not entitled either on theory of legal or equitable set-off to offset *pro rata* dividend declared or to be declared by him on claim of such bank to full extent of such deposit; receiver of each insolvent institution being liable to the other for *pro rata* dividends declared on respective claims and ordered paid by the Court.

4. RECEIVERS—RECEIVER IS OFFICER OF COURT THROUGH WHOM COURT TAKES POSSESSION OF ASSETS.—A receiver is an officer of the Court through whom the Court takes possession of assets for purpose of preventing their waste or destruction, and of reducing them to form necessary to ratable distribution.

5. RECEIVERS—PROPERTY IN HANDS OF RECEIVER IS IN CUSTODIA LEGIS. —Property in hands of receiver is *in custodia legis*, and he has no personal interest therein in his official character, except that which arises out of his responsibility in the faithful and correct discharge of his duties.

Before TOWNSEND, J., Richland, May Term, 1927. Reversed with directions.

Suit by James E. Peurifoy, Receiver of the American Bank & Trust Company, against N. B. Gamble, Receiver of the Home Bank of Barnwell. Decree for plaintiff, and defendant appeals.

The order of Judge Townsend directed to be reported is as follows:

"It is admitted that the American Bank & Trust Company became insolvent, and on the 25th of June, 1926, was placed in charge of the State Bank Examiner, and there remained until 19th July, 1926, when it was placed by this Court in charge of Jas. E. Peurifoy, Receiver. That when the American Bank & Trust Company ceased to do business, and became insolvent, it owed the Home Bank of Barnwell as depositor, $13,104.14. That thereafter said Peurifoy, as such Receiver, deposited $7,000 of the receivership funds in his hands in the Home Bank of Barnwell. That thereafter the Home Bank of Barnwell became insolvent, and was

placed in the hands of N. B. Gamble as Receiver. I conclude that, upon the insolvency of the American Bank & Trust Company in June, 1926, the Home Bank of Barnwell's claim as depositor was reduced to the right to share equally with the other unsecured depositors in the distribution of the assets of the American Bank & Trust Company in the hands of Peurifoy, Receiver.

"Judge Peurifoy, as Receiver, reduced the assets of the American Bank & Trust Company to cash, and deposited the $7,000 part of such assets in the Home Bank of Barnwell belonging equally to all creditors of the American Bank & Trust Company, to be distributed amongst them as dividends under the orders of the Court. The Home Bank of Barnwell had no greater rights in the deposit than any other creditor, and could only claim the dividends ordered by the Court to be paid upon its claims as a depositor in the American Bank & Trust Company. The Home Bank then owed Judge Peurifoy, as Receiver, the deposit of $7,000, and Judge Peurifoy *as Receiver* owed the Home Bank only the dividends ordered by the Court to be paid upon its claim for $13,104.14 against the American Bank & Trust Company. When the Home Bank became insolvent, and Mr. Gamble was appointed its Receiver, he had no greater interest in the $7,000 deposit as a creditor of the American Bank & Trust Company than the Home Bank had at the time of his appointment. *Gardner v. Chicago Title & Tr. Co.,* 261 U. S., 453; 43 S. Ct., 424; 67 L. Ed., 741; 29 A. L. R., 622. *State v. Corning St. Sv. Bank,* 128 Iowa, 597; 105 N. W., 159.

"It is, therefore, ordered, adjudged, and decreed that James E. Peurifoy, as Receiver of the American Bank & Trust Company, do withhold the payment of any dividends from the assets of American Bank & Trust Company on the claim of N. B. Gamble as Receiver of the Home Bank of Barnwell for $13,104.14, until the amount of such dividends shall equal the amount of $7,000, heretofore deposited by said Peurifoy as Receiver in said Home Bank of Barnwell,

which amount of dividends *is hereby ordered offset* against said deposit, and to be retained by said Peurifoy as Receiver for equal distribution amongst the creditors of the American Bank & Trust Company."

*Messrs. Brown & Bush,* for appellant, cite: *Rule in equity is that demands to be set off must be mutual:* 23 R. C. L., 57; 3 McC. Eq., 239; 134 S. E., 275; 146 U. S., 149; 34 Cyc., 719; 175 Fed., 154; Ann. Cas., 1916-D, 608. *Cases distinguished:* 261 U. S., 453; 278 Fed., 509; 29 A. L. R., 623.

*Messrs. D. W. Robinson* and *D. W. Robinson, Jr.,* for respondent, cite: *Assets of insolvent bank are a trust for the equal and pro rata benefit of all creditors:* 136 S. C., 514; 124 S. C., 386; 77 S. C., 305; 81 S. C., 255. *Receiver gets no better right than that held by bank:* 136 S. C., 135, 195; 125 S. C., 367. *Receiver is a trustee:* 125 S. C., 217. *Notice:* 137 S. C., 36; 4 Rich. Eq., 116; 14 S. C., 321; 111 S. C., 330; 112 S. C., 563. *Set-off:* 2 Michie on Bks. & Bkng., 1015, 1016, 1050, 1061, Secs. 133, 134, 135; 293 Fed., 665; 146 U. S., 507. *Same, applies only in cases of mutual debts existing between the same parties in the same right:* 1 Michie, Bks. & Bkng., 555, Sec. 77; 3 R. C. L., 591, Sec. 211; 24 R. C. L., 858, Sec. 62; 146 U. S., 507; 268 U. S., 234; 40 A. L. R., 1095; 196 U. S., 509; Rose's notes, 322; 1 Morse on Bks. & Bkng. (4th Ed.), Sec. 334; 124 S. C., 386. *Same, does not apply in case of a special deposit for a specific purpose inconsistent with the right of the application of set-off:* 3 R. C. L., 595, Sec. 223; 126 N. W., 779; 30 L. R. A. (N. S.), 517; 28 L. R. A. (N. S.), 488; 261 U. S., 453; 29 A. L. R., 623; 105 N. W., 159. *Claim cannot be acquired after insolvency and used as set-off:* 136 S. C., 140; 24 R. C. L., 865, Sec. 70; Id., 843, Sec. 48; 2 Michie on Bks. & Bkng., 1017, Sec. 134; 261 U. S., 453; 146 U. S., 507; Id., 511; Rose's Notes, 193; 261 U. S., 456; 196 U. S., 509.

November 2, 1927.

The opinion of the Court was delivered by MR. JUSTICE STABLER.

On June 25, 1926, the American Bank & Trust Company of Columbia (hereinafter referred to as the Columbia Bank), finding itself unable to meet its obligations, closed its doors; and on July 19, 1926, James E. Peurifoy was appointed receiver, and duly qualified as such. At that time the Home Bank of Barnwell (hereinafter referred to as the Barnwell Bank), had on deposit with the Columbia Bank approximately $33,000, and owed it on notes approximately $20,000. After·deducting and offsetting the amount of the notes, the Columbia Bank still owed the Barnwell Bank $13,104.14, the balance on the deposit account. Some time after his appointment Mr. Peurifoy, as Receiver, deposited with the Barnwell Bank the sum of $7,000, money collected by him from the assets of the insolvent Columbia Bank; shortly after such deposit was made, the Barnwell Bank itself became insolvent and closed its doors, and the defendant, Gamble, was appointed Receiver of same.

Out of the peculiar situation thus created this action has arisen. The contention of the Receiver of the Columbia Bank is that he is entitled to offset *pro rata* dividends, declared or to be declared by him, and ordered paid by the Court, on the $13,104.14 deposit claim of the Barnwell Bank, against the $7,000 deposit made by him in the Barnwell Bank to the full extent of such deposit. The purpose of this suit, brought by him against the Receiver of the Barnwell Bank, is to obtain an order of Court allowing him to make such set-off.

The Receiver of the Barnwell Bank does not agree with this contention. He claims that neither the petitioner nor the defendant is entitled to a set-off, as there is a lack of mutuality of claims; but that the correct and just method of payment would be that he, as Receiver of the Barnwell Bank, should be paid the regular dividends, whenever declared and ordered paid, on the deposit of $13,104.14, which constitutes the claim of the Barnwell Bank against the Columbia

Bank; and that, likewise, the Receiver of the Columbia Bank should be paid his *pro rata* dividends on the $7,000 deposit placed by him in the Barnwell Bank, whenever dividends may be declared by the Receiver of that bank and ordered paid by the Court.

Judge Townsend, before whom the matter was heard at the May, 1927, term of the Court of Common Pleas for Richland County, held with the plaintiff, and ordered that the Receiver of the Columbia Bank withhold the payment of any dividends on the claim of the Receiver of the Barnwell Bank for $13,104.14, until the amount of such dividends should equal the $7,000 that had been deposited by the Receiver of the Columbia Bank in the Barnwell Bank, such dividends to be an offset against the deposit.

The defendant, Gamble, as Receiver of the Barnwell Bank, appeals to this Court from the order of Judge Townsend. He makes four exceptions, but, as stated by his counsel in their argument, the law applicable to each exception is applicable to all, as they raise the same question from different angles.

The ground of imputed error may be thus stated: That the presiding Judge erred in refusing to order the Receiver of the Columbia Bank to pay to the Receiver of the Barnwell Bank a *pro rata* dividend upon the deposit of the Barnwell Bank along with other depositors of the said Columbia Bank.

Judge Townsend, in his decree, says:

"Judge Peurifoy, as Receiver, reduced the assets of the American Bank & Trust Company to cash, and deposited the $7,000 part of such assets in the Home Bank of Barnwell belonging equally to all creditors of the American Bank & Trust Company, to be distributed amongst them as dividends under the orders of the Court. The Home Bank of Barnwell had no greater rights in the deposit than any other creditor, and could only claim the dividends ordered by the Court to be paid upon its claims as a depositor in the American Bank & Trust Company. The Home Bank then owed

Judge Peurifoy as Receiver the deposit of $7,000, and Judge Peurifoy *as Receiver* owed the Home Bank only the dividends ordered by the Court to be paid upon its claim for $13,104.14 against the American Bank & Trust Company. When the Home Bank became insolvent, and Mr. Gamble was appointed its Receiver, he had no greater interest in the $7,000 deposit as a creditor of the American Bank & Trust Company than the Home Bank had at the time of his appointment."

Counsel for respondent contend that the conclusions arrived at by the learned Circuit Judge may be sustained upon two grounds: (1) Under the general doctrine of legal offset; and (2) upon the principle of equitable set-off.

The assets of an insolvent bank are a trust fund in the hands of the Receiver, to be reduced to money and ratably distributed among all the creditors. *Livingstain v. Bank,* 77 S. C., 305; 57 S. E., 182; 22 L. R. A. (N. S.), 442; 122 Am. St. Rep., 568.

In the *Livingstain case* the Court said:

"No rule of equity appeals more to the judicial conscience than that which requires the assets of an insolvent corporation to be distributed ratably among creditors."

In the case of *Citizens' Bank v. Bradley,* 136 S. C., 514; 134 S. E., 510, this language of the *Livingstain case* is quoted with approval; the Court adding:

"He who claims a departure from this rule must establish his right clearly."

As to the respondent's first proposition, there is no disagreement that, ordinarily, a bank has a right to apply the deposit of an insolvent debtor to the payment of the bank's claim against him, and that one owing an insolvent bank has a right to have his deposit applied as an offset against such debt. *Scott v. Armstrong,* 146 U. S., 507; 13 S. Ct., 148; 36 L. Ed., 1062. But it must be shown that the debts are mutual ones and exist between the same parties in the same right. To illustrate: In the present case, when the Columbia Bank went into the hands of a

receiver, the Barnwell Bank had on deposit with it approximately $33,000, and owed it on notes approximately $20,-000. These claims were clearly mutual debts between the same parties, and an offset was proper and was made, leaving a balance of the deposit, the sum of $13,104.14, owing the Barnwell Bank by the insolvent Columbia Bank.

Arguing further, the respondent contends that the general doctrine of legal offset is permissible and applicable in this case, because, as he claims, the $7,000 deposited by the Receiver of the Columbia Bank in the Barnwell Bank before its insolvency is a debt owing him in this official capacity as Receiver, and that *whatever dividends* are declared by him on the $13,104.14, the claim of the Barnwell Bank against the Columbia Bank, are debts owing by him as such Receiver to the Barnwell Bank, and that under this view the claims are mutual, existing between the same parties in the same right.

We do not agree with this contention. A receiver is an officer of the Court through whom the Court takes possession of the assets of the insolvent bank, for the purpose of preventing their waste or destruction and of reducing them to such form as may be necessary for their ratable distribution among those who may be entitled thereto. A receivership is simply a remedial agency created for the purpose of preserving and disbursing the assets of the insolvent estate. The property in the hands of the Receiver is *in custodia legis;* the possession of the property by him is the possession of the Court which appointed him. · It follows that he has no personal interest in the property in his official character, except that which arises out of his responsibility in the faithful and correct discharge of his duties. He is the medium through which the Court acts in the execution of its orders and decrees.

We do not think that, strictly and correctly speaking, it can be successfully maintained that the dividends passing through the hands of the Receiver of an insolvent bank, declared by him in the line of his duties as such receiver and

ordered paid by the Court, are *debts owing by him as such Receiver* to the creditors of the insolvent concern. Whatever assets come into his hands as such Receiver are held and conserved by him, not as a debtor of such creditors in his official capacity, but as an officer and arm of the Court appointing him. As is seen, he is an instrument or agency through which the Court acts, as it may determine from time to time, in the settlement of the insolvent bank, by the payment of the debts of such insolvent institution, through the method of declaring and payment of *pro rata* dividends on the claims of creditors filed and allowed.

As said by the Court in *American Slicing Machine Co., In re,* 125 S. C., 218; 118 S. E., 303, 304:

"The property becomes a trust fund for the payment of debts, *and the receiver simply holds it for the benefit of those* ultimately entitled, in law or equity, to it." (Italics added.)

It is therefore clear that the Receiver has, in his official capacity, no personal interest in the dividends declared by him and ordered paid by the Court, except to faithfully perform his duty in their payment, as directed. Certainly, he has no interest that would warrant the conclusion that *he owed such dividends* to the creditors of the insolvent bank.

It is not contended that, at the time the Receiver's deposit of $7,000 was made, the Barnwell Bank could have offset its claim against the insolvent Columbia Bank to any extent whatever against such deposit. Clearly, if such contention were made, it could not be sustained. The making and receiving of the deposit carried with it an implied agreement (see *Akin v. Williamson* [Tenn. Ch.], 35 S. W., 569), that the Barnwell Bank would not make such application of the deposit, but that, in accepting same, it recognized the Receiver's right to its control. Otherwise it would not have been a deposit, but a payment to the Barnwell Bank, as a preferred creditor, of a part of its claim against the Columbia Bank, which would not be allowed.

The circumstances of this case are peculiar, and it appears that the question involved has never been decided by this Court. The cases in other jurisdictions are not in accord.

The *Akin case, supra,* is directly in point; the facts and the contentions of the parties being similar to those in the present case. That case supports the contention of the appellant, and we are impressed with its logic and persuasiveness.

The Court in the *Akin case* held that, as there was a lack of mutuality of claims, there could be no legal set-off of same as contended for by the plaintiff; but that, the case being decided on correct principle, the Receiver of each insolvent institution should pay to the other the *pro rata* dividends declared on the respective claims and ordered paid by the Court. See, also, *Rue v. Miller* (C. C. A.), 124 F., 208. Upon mature deliberation, we are satisfied that this conclusion is correct.

As to his second proposition, the respondent contends that, even if no such mutuality of claims here exists as would warrant a legal set-off, an equitable set-off should be allowed, under the facts of the case, as held by the Court below.

The judgment of the Circuit Court is supported by the case of *Gardner v. Title & Trust Co.,* 261 U. S., 453; 43 S. Ct., 424; 67 L. Ed., 741; 29 A. L. R., 623, cited by the Circuit Judge in his decree. That was a case in which the trustee in bankruptcy sought to assert a set-off under the Bankruptcy Act (11 USCA). The United States Supreme Court held that the set-off should be allowed, in the manner contended for by the respondent in the present case, on broad equitable grounds. The cases of *State v. Bank,* 128 Iowa, 597; 105 N. W., 159, and *People v. California, etc., Co.,* 168 Cal., 241; 141 P., 1181; L. R. A., 1915-A, 299, appear also to support to some extent the judgment of the Circuit Court.

In 23 R. C. L., at p. 57, we find the following:

"But the general rule in equity, as well as at law, is that the demands to be set off must be mutual, and that debts accruing in different rights cannot be set off against each other. Thus an individual claim cannot be set off against a trust fund. So where the demand of the Receiver is based, not on a credit earned before the insolvency, but on a credit earned by the Receiver in the management of the estate, it cannot be offset by a claim arising before the insolvency. But when there are peculiar circumstances which make it necessary, as the only way to prevent clear injustice, to allow the set-off of debts not mutual, but accruing in different rights, this may be done by Courts of full equity jurisdiction."

In *Carwile, Receiver, v. Metropolitan Life Ins. Co.,* 136 S. C., 140; 134 S. E., 275, 284, the Court said:

"The Courts have uniformly applied the principle of equitable set-off with great liberality to prevent injustice even in cases where elements requisite to legal set-off have been lacking."

And the Court in the *Akin case,* stating the principle in another form, said:

"It is well to remember that the allowance of an equitable set-off is not a matter of course, even where the ordinary technical requisites are present. A Court of equity will deny its active relief where the interposition of such relief would produce an inequitable result in the particular case."

With the peculiar circumstances of the present case in mind, we ask ourselves the question, would the relief asked for, if granted, produce an inequitable result?

When Mr. Peurifoy, as Receiver, took over the assets of the Columbia Bank, and reduced a great portion of them to money, he decided, as he says, to distribute, as deposits, a part of the money among the several banks of the State, more than 40 in number, to which the Columbia Bank was indebted, in order that these banks might have the use of the money in advance of the payment of the dividends to be

declared and paid on their claims, rather than to deposit the money in banks in Columbia or in banks outside of the State—an entirely laudable purpose.    At that time the Barnwell Bank knew of the insolvency of the Columbia Bank, and that Mr. Peurifoy was acting as Receiver of its assets; and, when it received the deposit of $7,000, it knew that such deposit was a trust fund, designed to be finally distributed ratably among the creditors of the insolvent Columbia Bank, of which number it was one.

The fact that this deposit was a trust fund, and known to the Barnwell Bank to be such, would not in any way affect its status as a deposit.    It was entitled to the same standing and consideration as any ordinary deposit; that it had the earmarks of a trust fund did not give in any special protection.    And, too, the fact that the purpose of making the deposit was to benefit the Barnwell Bank, whether or not such purpose was known to that bank, is not material.    If such deposit had been made in a bank not indebted to the Columbia Bank, and which afterwards failed, it would have benefited such bank whether made for that purpose or not. Under the circumstances disclosed, the creditors of the Barnwell Bank, when it became insolvent, had such rights under the new status thus created as a Court of equity will not disregard.

All moneys realized from the assets of an insolvent bank go to the creditors ratably through the hands of the Receiver as provided by law.    Hence, when the Columbia Bank became insolvent, and its Receiver qualified, all *pro rata* dividends declared by him and ordered paid by the Court on the claim of the Barnwell Bank were payments on the debt, to the extent of the amount of such dividends; and, when the Barnwell Bank went into the hands of a Receiver, it was proper that these dividends should be paid over to him, as provided by law, for the benefit of the creditors of that defunct institution.    So, likewise, when the Barnwell Bank became insolvent and its Receiver qualified, whatever divi-

dends might be declared by him and ordered paid by the Court upon the debt owing the Receiver of the Columbia Bank should be paid into the hands of that Receiver, for distribution among the creditors of such bank. It makes no difference that the debt owing by the insolvent Barnwell Bank is one in favor of the Receiver of the Columbia Bank in his official capacity, as dividends declared upon such debt would be for the benefit of the creditors of the insolvent Columbia Bank, and only pass through the hands of its Receiver for ultimate distribution among them. It appears to us that any other method or plan of settlement would produce an inequitable result. Certainly, the plan contended for by the respondent would work an injustice to the creditors of the insolvent Barnwell Bank, which a Court of equity should not permit.

It is clear, then, that the Receiver of the Columbia Bank should pay over to the Receiver of the Barnwell Bank any *pro rata* dividends already declared, or that may hereafter be declared upon the claim of $13,104.14, of the Barnwell Bank against the Columbia Bank; and that, on the other hand, the Receiver of the Barnwell Bank should pay over to the Receiver of the Columbia Bank any *pro rata* dividends that may be now or hereafter declared upon the $7,-000 deposit, made by the Receiver of the Columbia Bank.

The decree of the Circuit Court is reversed, and the case remanded, with instructions that the Receiver of the Columbia Bank pay over to the Receiver of the Barnwell Bank all *pro rata* dividends already declared, or that may hereafter be declared, upon the $13,104.14 claim of the Barnwell Bank against the Columbia Bank.

And it is so ordered as the judgment of this Court.

MR. CHIEF JUSTICE WATTS and MR. JUSTICE CARTER concur.

MR. JUSTICE COTHRAN dissents.

MR. JUSTICE BLEASE disqualified.

### ON PETITION FOR REHEARING

*PER CURIAM.* A petition has been filed in this case by the respondent, asking for a rehearing. After careful consideration of the grounds stated therein, together with the opinion heretofore filed in the case, we are satisfied that no material fact or principle of law has been overlooked or disregarded by the Court.

It is therefore ordered that the petition be dismissed, and that the order heretofore granted, staying the remittur, be revoked.

MR. CHIEF JUSTICE WATTS and MESSRS. JUSTICES STABLER and CARTER concur.

MR. JUSTICE COTHRAN (dissenting from order dismissing petition) : I am so firmly conviced of the erroneous conclusion declared in the majority opinion, and so deeply interested in a right determination of the issues involved in this appeal, that I have revised my dissenting opinion, with the hope that the error may be more clearly demonstrated than hitherto.

In the event of continued failure, the dissenting opinion heretofore filed is withdrawn, and this opinion substituted as a dissent to the majority opinion and to the order dismissing the petition for a rehearing.

This proceeding, entitled a "petition and complaint," is really a petition to the Court, by the Receiver of the American Bank & Trust Company, appointed in the case of *Rice v. City of Columbia,* for instructions in reference to a matter which has arisen in the administration of his trust. The party adversely interested is N. B. Gamble, Receiver of the Home Bank of Barnwell, who has been made respondent to the Receiver's petition.

The controversy between the two Receivers may be thus stated :

On June 25, 1926, the American Bank & Trust Company (hereinafter designated for convenience the Columbia

Bank) ceased to function, and on June 26th was taken over by the State Bank Examiner pursuant to statute. On July 19th, in the action instituted by *John I. Rice et al. v. The City of Columbia et al.,* J. E. Peurifoy was appointed Receiver of the Columbia Bank, and qualified the following day.

At the time of the closing of the Columbia Bank, the Home Bank of Barnwell (hereinafter designated for convenience the Barnwell Bank) was a deposit creditor of the Columbia Bank to. the extent, approximately, of $33,000, and owed it, approximately, $20,000. Upon striking a balance, therefore, the Columbia Bank owed the Barnwell Bank approximately $13,000.

After the appointment of the Receiver of the Columbia Bank, he proceeded to convert its assets into cash, and out of such cash, amounting to many thousands of dollars, he made a deposit of $7,000 with the bank of Barnwell, *which was then a going concern.* He did this in pursuance of a very commendable policy of depositing with all of the banks (some 40 in number) which were deposit creditors of the Columbia Bank sums of money which he estimated would be equal to the anticipated dividends which they severally would receive from his administration of the affairs of the Columbia Bank; thus giving them in advance the use of the dividends pending his administration of the assets.

Thereafter, in November, 1926, four months later, the Bank of Barnwell also ceased to function and was placed in the hands of the appellant, N. B. Gamble, as Receiver.

The Receiver of the Columbia Bank contends that he is entitled to withhold from the Receiver of the Barnwell Bank the dividends which may be declared upon its deposit credit balance of $13,000 until they shall be equal to the $7,000 deposit which he made in the Barnwell Bank, under the circumstances stated.

The Receiver of the Barnwell Bank resists this contention, and claims that the Receiver of the Columbia Bank should

pay the dividends as declared upon its $13,000 deposit, and await, and receive only such dividends as he might be ordered to pay in the administration of the affairs of the Barnwell Bank, or, as suggested by counsel at the hearing, apply the $7,000 deposit item as a credit upon the $13,000 deposit credit, and pay the dividends upon the balance.

The matter was heard by his Honor, Judge Townsend, at the May Term, 1927, upon the petition, the return of the Receiver of the Barnwell Bank, and brief testimony from Peurifoy, Receiver of the Columbia Bank. (There is really no controversy between the parties as to the facts, as above detailed.) Later he filed an order, which will be reported, sustaining the contention of the Receiver of the Columbia Bank, directing that he withhold payment of dividends upon the claim of the Barnwell Bank until the amount thereof shall equal the $7,000 deposit with the Barnwell Bank. From this order the Receiver of the Barnwell Bank has appealed.

The right of Receiver Peurifoy to so withhold dividends upon the claim of the Barnwell Bank is based upon a denial of the right of Gamble, Receiver, to set off the deposit credit of $13,000 which was due to the Barnwell Bank by the Columbia Bank at the time of the collapse of the latter against the liability of the Barnwell Bank upon the $7,000 deposit made by Peurifoy, Receiver.

At the taking over of the Columbia Bank by the Examiner, the functions of the corporation ceased; its assets became a trust fund for all the creditors; the tree had to be cut up as it lay. The same condition existed, in an accentuated degree, when the Receiver was later appointed. At that time the Barnwell Bank's rights *as a going concern* were fixed; it became entitled to its *pro rata* dividend, out of the assets of the bank, upon its deposit claim of $13,000; no more and no less. *That was a claim against the Receiver of the Columbia Bank, in the administration of its assets.*

Later, the Receiver of the Columbia Bank, out of the assets of the estate in his hands, *out of the trust fund for the benefit pro rata of all the creditors of the bank,* deposited with the Barnwell Bank $7,000. He testified that he did so in pursuance of the very commendable policy above stated. It does not clearly appear that the Barnwell Bank was notified, at the time, of the particular motive and purpose of the Receiver in making that deposit. I feel satisfied from all the circumstances that such motive and purpose were thoroughly understood by the Barnwell Bank; but whether or not it had actual notice thereof I do not think is material. It certainly had notice, from the terms of the deposit (*in the name of the Receiver*), that it was a part of the trust estate then in his hands, and is chargeable with the knowledge of such facts as a reasonable inquiry, excited by such notice, would have developed.

From the fact that, within the short space of four months, the Barnwell Bank closed its doors, and that the Columbia Bank had $13,000 of its money when it failed, it is not an unnatural inference that, after the failure, the Barnwell Bank was a prominent member of the "bread line" leading to the door of the Receiver, and that the deposit of $7,000 by Peurifoy, Receiver, was really an advance payment by him upon the dividends which should later be payable to the Barnwell Bank. If so, it would simply be carrying out at least the implied agreement of the parties that the dividends thereafter payable by the Receiver to the Barnwell Bank should be credited with this advance payment.

But, laying aside this, to my mind, very plausible explanation and solution of the situation, and assuming that there is no evidence of such express or implied agreement, I think that it is clear that, when the Barnwell Bank received the $7,000 deposit, and entered it in the name of the Receiver, *it received it with the knowledge that it was a part of a trust fund,* and must account to the Receiver, the trustee, for the full amount, by crediting the obligation of the

Receiver *for its dividends* (not the obligation of the defunct bank for the $13,000 deposit balance), with the amount of the Receiver's $7,000 deposit.

A contrary conclusion, it appears to me, would enable the Receiver of the Barnwell Bank, who stands in the shoes of that bank, to appropriate for the benefit of *its* creditors the whole of the $7,000 *which in reality belongs to the creditors of the Columbia Bank.*

As a matter of fact, a dividend of 50 per cent. has been declared in favor of the depositors of the Columbia Bank, and it is estimated that 20 per cent. additional will be declared. It does not appear what dividend will be declared by the Receiver of the Barnwell Bank. For the purpose of illustration, let it be assumed as 20 per cent. The actual results of the opposing contentions may then be thus expressed:

### RECEIVER PEURIFOY'S CONTENTION

The Receiver of the Barnwell Bank is entitled to
    a 50 per cent. dividend upon its $13,000 deposit balance ........................$    6,500.00
A further dividend of 20 per cent. will probably
    be declared ..........................    2,600.00

                                        $    9,100.00
The Barnwell Bank is due the amount of the deposit made by Peurifoy, Receiver ........    7,000.00

Balance due the Receiver of the Barnwell Bank $    2,100.00

### RECEIVER GAMBLE'S CONTENTION

The Receiver of the Columbia Bank is and will
    be due the dividends as above stated ......$    9,100.00
The Receiver of the Barnwell Bank is and will
    be due the dividends at 20 per cent. upon

the $7,000 deposit made by Peurifoy, Re-
ceiver .............................    1,400.00

Balance in favor of Gamble, Receiver of Barn-
well Bank .........................$   7,700.00

A difference in balances of $5,600 in favor of Gamble,
Receiver. In other words, that $5,600 of the $7,000 is
absorbed into the assests of the Barnwell Bank, and neces-
sarily, abstracted from the $7,000 deposit which was in the
hands of Peurifoy, Receiver, for *pro rata* distribution among
*all of the creditors* of the Columbia Bank. The Receiver
of the Barnwell Bank will thereby receive $7,700 plus
$5,600, equal to $13,300, upon the deposit balance of $13,-
000, $300 more than 100 per cent.

At the hearing of the appeal, counsel for the defendant
expressed the opinion that the most equitable solution of the
controversy, which he was disposed to accept, would be
to credit the Receiver of the Columbia Bank with $7,000,
the amount of its deposit with the Barnwell Bank, upon the
latter's deposit balance of $13,000, leaving $6,000 upon
which the Receiver of the Barnwell Bank would receive a
dividend.

That theory would result thus:

The Columbia Bank (*not Peurifoy as Receiver*)
owed the Barnwell Bank .............$ 13,000.00
The Barnwell Bank owes the *Receiver* a deposit
credit *made by him of* ...............    7,000.00

The Columbia Bank owes the Barnwell Bank
a balance of ......................$   6,000.00

Upon which the receiver of the Barnwell Bank
is entitled to a dividend of 50 per cent. ..$   3,000.00
And an additional dividend of 20 per cent....    1,200.00

Total .........................$   4,200.00

To which must be added the elimination of the
    Peurifoy deposit ...................:.....    7,000.00

    Total ...........................$ 11,200.00
—practically 87 per cent. of the deposit balance of $13,000,
when all other creditors will receive not exceeding 70 per
cent. which will be reduced by the allowance of the 17 per
cent. preference to the Barnwell Bank.

I think that either plan of settlement suggested by the
receiver of the Barnwell Bank is opposed to the equities
of the situation, and that neither should receive the sanction
of this Court.

An exceedingly important and decisive consideration ap-
pears to me to have been entirely overlooked in the majority
opinion; that is, that a complete transformation in the status
of the assets of the Columbia Bank resulted from its in-
solvency and the appointment of a receiver. Up to that time,
the possession, title, and right of disposition were in the
corporation; and, as a matter of course, any claim which
the Barnwell Bank had against it might have been set off
against a claim which it had against the Barnwell Bank. As
a matter of fact, this is exactly what was done in arriving
at the credit balance of $13,000, in favor of the Barnwell
Bank upon the books of the bank when the Receiver took
charge.

The situation, however, was quite different upon insol-
vency and appointment of the Receiver. It is thus expressed
in the case of *In re American Slicing Co.,* 125 S. C., 214;
118 S. E., 303:

"A Receiver is the officer of the Court—as he has been
termed, the arm of the Court—appointed by the Court to
receive and preserve the property or fund in litigation, to-
gether with the rents, issues and profits, and to apply or
dispose of them at the direction of the Court. The Receiver
of an insolvent corporation represents, not only the Cor-
poration, but also its stockholders, and creditors, and it is

his duty to assert and protect the rights of each of these several classes of persons; *he is regarded as a trustee for them.* * * * The property becomes a trust fund for the payment of debts, and the Receiver simply holds it for the benefit of those ultimately entitled, in law or equity, to it."

To the same effect are *Carroll v. Cash Mills,* 125 S. C., 332; 118 S. E., 290, and *Carwile v. Ins. Co.,* 136 S. C., 179; 134 S. E., 285.

In *Scott v. Armstrong,* 146 U. S., 499; 13 S. Ct., 148; 36 L. Ed., 1059, the Court said:

"The Receiver took the assets of the Fidelity Bank as a mere trustee for creditors. * * * *"

That the assets of an insolvent bank are a trust fund for the equal, *pro rata,* benefit of all creditors, and must be so administered, is settled by the cases of *Citizens' Bank v. Bradley,* 136 S. C., 514; 134 S. E., 510. *McColl v. Cottingham,* 124 S. C., 386; 117 S. E., 415. *Livingstain v. Bank,* 77 S. C., 305; 57 S. E., 182; 22 L. R. A. (N. S.), 442; 122 Am. St. Rep., 568. *Ex parte Berger,* 81 S. C., 255; 62 S. E., 249; 22 L. R. A. (N. S.), 445. *In re American Slicing Co.,* 125 S. C., 217; 118 S. E., 303.

In *U. S. v. Butterworth,* 269 U. S., 504; 46 S. Ct., 179; 70 L. Ed., 380, the Court said:

"It is established that, when a Court of Equity takes into its possession the assets of an insolvent corporation, it will administer them on the theory that *in equity they belong to the creditors and shareholders* rather than to the corporation itself. * * * Taken in connection with its insolvency, now conceded, respondent's answer admitting the allegations of the complaint and its consent to the decree appointing Receivers amounted to the handing over of all its property and business to the Receivers to be administered, under the direction of the Court, *as a trust fund to pay respondent's debts.*"

If, then, which appears to be settled, the Receiver of the Columbia Bank became a trustee for the creditors and stock-

holders of that bank, he held the assets which came into his hands as a trustee for all the creditors, including the Barnwell Bank, and the stockholders. The deposit which he made under the circumstances detailed was a part of such trust funds, in which the Barnwell Bank was interested only to the extent of its distributive share. To allow it to take it *all,* which is the inevitable result of allowing it to set off its $13,000 claim against the $7,000 deposit, would transfer to it property which belonged to all of the creditors *pro rata;* a manifest injustice to the other creditors.

The deposit of $7,000 was made by the Receiver of the Columbia Bank from the assets of the estate which he had collected after the failure of the bank; it was made in, and received by, the Barnwell Bank as a part of those assets; it was entered upon the books of the Barnwell Bank to his credit *as Receiver;* no one else had authority to draw upon that account; the Barnwell Bank is necessarily charged with notice of the fact that it was a part of the trust funds.

At that time the Barnwell Bank was a going concern. Could it *then,* having received the deposit with the most explicit knowledge of its unquestioned fiduciary character, have appropriated the deposit by applying it as a credit upon its claim of $13,000 against the Columbia Bank? The authorities, based upon reason and justice, are overwhelming that it could not. *If it had that right, the deposit would have been a payment and not a deposit.*

As a going concern at that time, it had only the right to offset its claim to dividends against the Receiver's deposit; its subsequent insolvency could not change the situation and confer upon its Receiver a greater right than the bank had. *Carwile v. Ins. Co.,* 136 S. C., 135; 134 S. E., 275, and Id., 136 S. C., 195; 135 S. E., 285. *Carroll v. Cash Mills,* 125 S. C., 367; 118 S. E., 290.

"Bank knowing circumstances sufficient to necessitate inquiry cannot set off deposit of trust fund against deposi-

tor's individual indebtedness." *First Nat. Bank v. Duncan,* 127 Okl., 226; 260 P., 491.

"Where a bank knows that money deposited with it to the general credit of a depositor is held in trust by such depositor, the bank has no right to apply such deposit to the payment of a note due to it from the depositor." *Clemmer v. Bank,* 157 Ill., 206; 41 N. E., 728.

"In case of sale of town bonds and a deposit of the proceeds in a bank to the credit of 'A B trustee,' held, that the form of deposit was notice to the bank of the real ownership, and the funds could not be appropriated for a debt of the trustee." *Bundy v. Monticello,* 84 Ind., 119.

"When an agent or trustee has deposited money belonging to his principal or beneficiary in a bank to which he is himself indebted, and the bank, without his authority, and in ignorance of the true ownership of the fund, has applied it on the debt, the owner is not debarred from recovering it from the bank if it can be identified." *Burtnett v. Bank,* 38 Mich., 630.

"A bank cannot use a deposit made by the depositor in a fiduciary capacity to pay the individual debts of such depositor due to it." *Johnson v. Bank,* 56 Mo. App., 257.

"Where a bank, in whose hands is a trust fund, participates with the trustee in a misapplication of the fund by applying it on the debt of the trustee, the bank is liable to the *cestui que* trust." *Bank v. Clapp,* 76 N. C., 482.

"A, the assignee for the benefit of creditors, deposited in bank the proceeds of the sale of the assigned estate on his individual account. The president of the bank knew that the money belonged to the estate of the assignor. The bank appropriated part of the fund to the payment of certain notes drawn and indorsed by A as an individual. Held that A was entitled to recover the amount so appropriated by the bank." *First Nat. Bank v. Peisert,* 2 Penny. (Pa.), 277.

"A bank is liable to the true owner of a fund deposited by a trustee, where it knowingly appropriates it to the satis-

faction of a debt due to it from the trustee before the deposit." *American Co. v. Boone,* 102 Ga., 202; 29 S. E., 182; 40 L. R. A., 250; 66 Am. St. Rep., 167.

"If checks designated on their face as trust funds, and payable to a public officer as such, are deposited by the latter with directions to apply the proceeds on his individual indebtedness, and the bank so appropriates the same, it is liable to account therefor to the beneficiaries." *Shepard v. Bank,* 149 Ind., 532; 48 N. E., 346.

"Where a bank which was a creditor of an insolvent estate received a deposit of funds from the Receiver, it could not apply such funds on its claims nor plead such claims as an offset against the deposit." *State v. Bank,* 128 Iowa, 597; 105 N. W., 159.

"Where a bank deals with a depositor as a trustee, and recognizes funds standing in his name as trust funds, knowing them to be such, it cannot appropriate them to the payment of the trustee's individual indebtedness to the bank." *Bank v. McCabe,* 135 Mich., 479; 98 N. W., 20.

"A bank cannot use a deposit to pay the individual debt of a depositor due to it, where it has knowledge that the deposit is held in a fiduciary capacity." *Mayer v. Bank,* 86 Mo. App., 422.

"Where a bank appropriates a trust fund on deposit with it to the payment of a debt due the bank from the trustee, it is liable therefor." *Bank v. Ingersoll,* 2 Neb. (Unof.), 617; 89 N. W., 618.

"A bank that appropriates a deposit made by a customer to reduce his debt, knowing that it is a trust fund, is liable to the true owner for conversion." *Bank v. Bank,* 64 Neb., 413; 89 N. W., 1030.

"A bank can appropriate the funds of a depositor to a debt due from him, unless the bank knows that it is a trust fund, in which case it will be liable to the beneficiary on such appropriation." *Bank v. Bank,* 64 Neb., 413; 89 N. W., 1030.

"A bank may not use a deposit to pay the individual debt of a depositor where it knows that the deposit is held in a fiduciary capacity." *Moore v. Bank,* 154 Mo. App., 516; 135 S. W., 1005.

"Where a bank knows that a deposit is a trust fund, and appropriates it to the depositor's indebtedness, it is liable therefore to the true owner." *Walters Nat. Bank v. Bantock,* 41 Okl., 153; 137 P., 717; L. R. A., 1915-C, 531.

"A bank, dealing with a depositor as trustee, and recognizing funds standing in his name as trust funds, and knowing them to be such, cannot appropriate the same to the payment of an individual debt to the bank, as there is no right of set-off against a trust deposit." *Wagner v. Bank,* 122 Tenn., 164; 122 S. W., 245; 28 L. R. A. (N. S.), 484; 135 Am. St. Rep., 869; 19 Ann. Cas., 483.

"Bank cannot, without liability to true owner, knowingly appropriate to debt due it by another trust funds deposited with it by him after creation of debt." *Bank v. Blue Diamond Coal Sales Co.,* 32 Ga. App., 458; 123 S. E., 725.

"A deposit made for special purpose or under a special agreement or with knowledge or notice of the bank of its trust character cannot lawfully be appropriated by the bank to the discharge of a matured obligation owing by the depositor." *Hanby v. Bank,* 197 Iowa, 150; 197 N. W., 51.

"If a bank has notice of the equitable rights of a third person in funds of its depositor, it cannot apply such funds in satisfaction of the individual indebtedness of the depositor to it." *Keeney v. Bank,* 33 Cal. App., 515; 165 P., 735.

"Where executor received check payable to him as such, and covering funds of the estate and indorsed it as such, and also indorsed personally, and deposited it to his personal account, the bank, having notice of fiduciary character of deposit, was liable to estate for its application to payment of executor's own notes." *Hale v. Bank,* 90 Vt., 487; 98 A., 993.

"A bank which diverts a trust fund to the payment of the personal debt of a depositor is liable to the true owner." *Vance Co. v. Trust Co.,* 93 Wash., 563; 161 P., 341.

"A bank accepting a deposit of trust funds with knowledge of their character, which applies them to the payment of the personal debt of the depositor, or assists him in misusing or misapplying them, is liable to the beneficial owner." *Bank v. State,* 61 Ind. App., 360; 112 N. E., 40.

"The general rule that a bank may treat money deposited as the individual property of the depositor does not apply, when the bank has knowledge that the deposit is held by the depositor in a fiduciary capacity." *Security Bank v. Geren* (C. C. A.), 288 F., 317.

In *Bank v. Gillespie,* 137 U. S., 411; 11 S. Ct., 118; 34 L. Ed., 724, the syllabus is as follows:

"A bank, receiving on deposit from a factor, * * * moneys which it must have known were the proceeds of property of the factor's principal, consigned to him by the principal for sale on the principal's account, of which moneys the principal was the beneficial owner, cannot, as against the latter, appropriate the deposits to the payment of a general balance due to the bank from the factor. * * *"

In *Lynam v. Bank,* 98 Me., 448; 57 A., 799, the Court said:

"Upon consideration of all the circumstances, and the situation of the parties, we think it a fair inference that the bank understood that the deposit was intended only for safekeeping, to be ultimately appropriated for the benefit of all the creditors of the Granite Company, and that in fact it was a deposit in trust for that purpose. And it being charged with such trust, the plaintiff, as trustee in bankruptcy, is entitled to recover."

In the case last cited, the granite company was a regular depositor, and owed the bank. Preparatory to bankruptcy proceeding, and to the knowledge of the bank, the deposit was made. Thereafter the bank claimed the right to set off

the debt of the granite company to it, against its liability for the deposit. The Court held that, as the bank knew that the deposit was made for the special purpose of having it kept for distribution as a part of the bankrupt estate, the set-off should not be allowed. This case was decided upon the circumstantial evidence of the purpose of the deposit. How much stronger is the case at bar, where *the law* fixes the status of the deposit as a trust fund.

"The proposition that there is no right to set-off against a trust deposit, nor any lien for the trustee's personal debts, is axiomatic." 3 A. & E. Enc. L. (2d Ed.), 837.

In *Wilson v. Dawson,* 52 Ind., 515, it was said:

"It is a general rule, that funds deposited in a bank for a special purpose, known to the bank, cannot be withheld from that purpose, to the end that they may be set off by the bank against a debt due to it from the depositor" (rather, that a debt due to it may be set off against its liability for the deposit).

In *State ex rel. Corroll v. Bank,* 128 Iowa, 597; 105 N. W., 159, the syllabus is:

"Where a bank which was a creditor of an insolvent estate received a deposit of funds from the Receiver, it could not apply such funds on its claims nor plead such claims as an offset against the deposit."

In the opinion it is said:

*"But the relation of the bank as a creditor of the estate and that of it as a depository of an officer of the Court are entirely distinct and separate. It could not apply the Receiver's funds on its claims, nor plead said claims as an offset to his demands for the deposit,* at least not in excess of the amount previously ordered by the Court to be paid thereon."

The ruling in this case last cited came about in rather a singular way. It was sought to charge the Receiver with negligence in depositing the estate funds in a bank which held a claim against the insolvent debtor, upon the supposed

right of the depository bank to apply the fund deposited by the Receiver to its claim against the debtor. It was, of course, decided that this right did not exist, and that consequently the charge of negligence vanished.

In *State Bank v. McCabe,* 135 Mich., 479; 98 N. W., 20, the Court said:

"Where a bank deals with a depositor as a trustee, and recognizes funds standing in his name as trust funds, knowing them to be such, it cannot appropriate them to the payment of the trustee's individual indebtedness to the bank."

See, also, *Re Davis* (D. C.), 119 F., 950.

In *Murray v. Pinkett,* 12 Cl. & F., 765 (English case), the Lord Chancellor said:

"Whether that might or might not prevail if these shares belonged to him individually, is another matter; but is that to prevail on the assumed fact, which is now established, that he had not these shares beneficially, *but that he was a trustee of them for others?* The doctrine would be this, that if property be vested in a person in trust, if that property in any way comes under the control of persons to whom he is indebted, those persons can pay the trustee's debt (personal?) out of the trust money!"

A proposition, of course, which the Court repudiates.

In *Baker v. Bank,* 100 N. Y., 31; 2 N. E., 452; 53 Am. Rep., 150, the Court held that, where a firm of commission merchants which was insolvent opened a bank account in the name of the firm, adding the word "agent," for the purpose of protecting its principals, the bank having knowledge of such purpose, and deposited to the credit of that account the proceeds of sale of goods of a principal, and upon settlement gave him a check for the balance belonging to him, the bank had no right to charge against the account an individual debt of the firm even with the firm's consent. Is that not exactly what the Barnwell Bank proposes in this case to do?

"It has been considered that where a deposit is impressed with a trust, the bank cannot retain it on the doctrine of equitable set-off."   7 C. J., 660.

"Manifestly there can be no right of set-off unless the demands are responsive, one to the other; that is, there cannot be a set-off of a trustee's funds against a personal debt." *Newhouse v. Bank* (D. C.), 13 F. (2d), 887.  *Poisson v. Williams* (D. C.), 15 F. (2d), 582.

At the time of the failure of the Columbia Bank, the Barnwell Bank had a deposit credit of approximately $33,000 with that bank; it owed the Columbia Bank notes aggregating $20,000.  As a matter of course, the Columbia Bank had the right to set off its claim for $20,000 against the deposit balance of $33,000, leaving it in debt $13,000.  It appears that no question has been raised as to this adjustment.  The right of set-off, as applied to the $7,000 deposit, however, stands upon a very different footing; it is to be determined by the situation *at the time of the deposit,* as the other is determined *at the time of the failure.*  At the time of the deposit, the Barnwell Bank unquestionably would have been entitled to set off *its claim for dividends* against the deposit, but not *its claim for the $13,000 balance.*  This is what the Receiver of the Barnwell Bank is asking for, and which was properly denied by the Circuit Decree.

"The right to a set-off against the Receiver of a bank is to be governed by the state of things existing at the moment of insolvency, and not by conditions thereafter created." *Williams v. Coleman,* 190 N. C., 368; 129 S. E., 818.

In *National Bank v. Ins. Co.,* 104 U. S., 54; 26 L. Ed., 693, the Court said:

"But when against a bank account, designated as one kept by the depositor in a fiduciary character, the bank seeks to assert its lien as a banker for a personal obligation of the depositor, known to have been contracted for his private benefit, it must be held as having notice that the fund represented by the account is not the individual property of the

depositor, if it is shown to consist, in whole or in part, of funds held by him in a trust relation."

The Court quotes from the case of *Bailey v. Finch,* Law Rep., 7 Q. B., 34:

"In the same case, Blackburn, J., said, that opening the account as executor operated 'as a notice to them, as a statement to the bank—"This account which I am opening is not my own unlimited property, but it is money which belongs to the estate which I am administering as executor; consequently there may be persons who have equitable claims upon it." ' "

Further the Court said:

"But although the relation between the bank and its de-. positor is that merely of debtor and creditor, and the balance due on the account is only a debt, yet the question is always open, *To whom in equity does it beneficially belong?* If the money deposited belonged to a third person, and was held by the depositor in a fiduciary capacity, its character is not changed by being placed to his credit in his bank account."

In the case of *Rue v. Miller* (C. C. A.), 124 F., 208, cited in the opinion of Mr. Justice Stabler, the syllabus is:

"In case of two insolvent estates, each indebted to the other, the dividend to one is to be set off against the dividend to the other."

There can be no possible objection to this principle; it has application, of course, only to a case where the debts proposed to be mutually set off were subsisting claims at the time of insolvency. In the case at bar, at the time of the collapse of the Columbia Bank, it owed the Barnwell Bank $33,000, and the latter owed it $20,000. The $20,000 was properly set off against the $33,000, leaving $13,000 due. There is no question as to the validity of this set-off, and it is all that the Barnwell Bank is entitled to, except the right to set off the dividend due by Receiver Peurifoy against the $7,000 deposit. The Barnwell Bank

has already exercised its right of set-off against the Columbia Bank, and now wishes to set off the $13,000 against the $7,000 deposit made by Receiver Peurifoy.

In the case of *Akin v. Williamson* (Tenn. Ch.), 35 S. W., 569, relied upon strongly by the appellant, Gamble, and in the leading opinion, the facts were these:

Bank A failed in 1891, and executed a general assignment for the benefit of creditors, in which the plaintiff, Akin, was appointed trustee. At the time of its failure, Bank A was indebted to another bank, Bank B, by overdraft, in the sum of $2,730.91. During his administration of the affairs of Bank A, Akin, the trustee, deposited with Bank B funds of the trust estate. Two years after the failure of Bank A, Bank B failed, and a Receiver (Williamson) was appointed. At that time Akin, the trustee, had a credit deposit balance in Bank B of $2,440.30. In an action by Akin, trustee of Bank A, against Williamson, Receiver of Bank B, the trustee claimed of the Receiver the entire balance, $2,440.30, which was to his credit *as trustee* in Bank B, at the time of its failure. The Receiver resisted this demand upon the ground that he was entitled to set off the debt which Bank A owed to it at the time of the failure of that bank, $2,-730.91. The Court declared: The question presented was whether or not the Receiver of the National Bank (Bank B), had a right to offset the deposit of Akin as trustee, against the overdraft of the Bank of Columbia (Bank A), of which Akin was trustee. (The Court manifestly intended to say whether or not the Receiver of Bank B had a right to offset *the overdraft of Bank A against the deposit of Akin as trustee.*)

Instead of sustaining the contention of the Barnwell Bank in this case, which is practically identical with the claim of the Receiver of Bank B in the *Tennessee case,* I think that it is a distinct repudiation of it.

In the *Tennessee case* the Court held that the question at issue should be determined by the *rights of the parties as*

*they stood at the making of the deposit;* that at that time there was an implied contract between the trustee of Bank A and Bank B that it would not apply his deposit upon the debt which Bank A owed to Bank B, but that Bank B would recognize the right of the trustee to control the deposit; that the very act of accepting the deposit meant this; *otherwise it would not have been a deposit at all, but a payment to Bank B* of its outstanding claim against Bank A, and *a breach of trust by the trustee of Bank A, in that it would have violated the direction of the assignment to pay the creditors pro rata;* that the right of offset did not exist *when the deposit was made,* and the subsequent insolvency of Bank B did not confer upon it a right of offset that it did not previously have.

The application of these principles to the case at bar is apparent.    When the Receiver of the Columbia Bank made the deposit of $7,000 with the Barnwell Bank, there arose an implied contract between them that the Barnwell Bank *would not apply the deposit to the payment of what the Columbia Bank owed it at that time, but that the Barnwell Bank would recognize the right of the Receiver of the Columbia Bank to control the deposit.*    The very act of accepting the deposit and entering it to the credit of the Receiver meant this; otherwise it would not have been a deposit at all, but a payment to the Barnwell Bank upon its outstanding claim against the Columbia Bank, and  a breach of trust by the Receiver, in that it would have violated the law which required him, in the execution of his trust, to distribute the assets of the Columbia Bank ratably among its creditors. The right of the Barnwell Bank to set off its claim against the Columbia Bank did not therefore exist at the time the deposit was made    *The subsequent insolvency of the Barnwell Bank could not confer upon it or its Receiver a right of offset which it did not previously have.*

It seems to me that the case of *Gardner v. Trust Co.,* 261 U. S., 453; 43 S. Ct., 424; 67 L. Ed., 741; 29 A. L. R., 622,

is absolutely conclusive of the issue here involved. The facts were these:

A coal company owed a bank a note of $15,000, secured by collateral, and was declared a bankrupt. The trustee in bankruptcy deposited with the bank which held the note funds of the bankrupt estate. Later the bank became insolvent, and a Receiver was appointed by the State Court. At the time of the collapse of the bank, the trustee in bankruptcy had a deposit credit in the bank of approximately $20,000, funds of the bankrupt estate deposited by him. Upon this deposit credit the Receiver of the bank paid dividends, reducing it to $13,000. The Receiver of the bank filed with the trustee in bankruptcy the claim of the bank on the $15,000 note. The trustee in bankruptcy then filed a petition praying an adjudication that he be allowed to set off his deposit claim of $13,000 against the note of $15,000. The Circuit Court of Appeals dismissed the petition, but the Supreme Court reversed that judgment, holding that the trustee in bankruptcy had the right to withhold dividends upon the bank's claim until the debt, represented by the deposit of funds of the bankrupt estate by the trustee, had been paid in full. (Exactly what his Honor, Judge Townsend, decreed in the case at bar.) The bank claimed the right to set off the note against the deposit made by the trustee, which claim was denied by the Court, saying:

"But when this money was deposited with this bank it seems that *the bank had notice that it was part of a fund appropriated to paying the coal company's debts,* of which the note held by the bank was one. [*Exactly the situation here.*] We think that it would be inequitable to allow the bank to proceed to diminish that fund [the trust fund], without accounting for the portion that it had received. [That is, the $20,000 deposit]. When the bank accepted deposits from a fund against which it had a credit [that is, for its *pro rata* dividend therefrom], it must be taken to have known that it could not profit by the fact at the expense of

other claimants. * * * The creditors of the bank can stand no better than the bank."

Just as here, when the Barnwell Bank accepted the deposit, knowing that it was a part of the assets of the Columbia Bank, in which it had an interest as a creditor of that bank, it could not profit by the transaction, at the expense of other creditors, who, it knew, had the same interest in the fund that it had.

In addition to the *Gardner case, supra,* the following cases from the Supreme Court of the United States confirm the conclusion herein announced: *Bank v. Ins. Co.,* 104 U. S., 54; 26 L. Ed., 693. *Union Stock Yards v. Gillespie,* 137 U. S., 417; 11 S. Ct., 118; 34 L. Ed., 724. *United States v. Butterworth,* 269 U. S., 504; 46 S. Ct., 179; 70 L. Ed., 380.

In *Harter Bank v. Inglis* (C. C. A.), 6 F. (2d), 841, the syllabus is:

"Where company engaged in general banking business was placed under receivership, and bank, after learning thereof, applied its deposit in payment of unmatured note, equities of claimants to deposit as proceeds of sale of shares of stock and funds intrusted to insolvent bank, which were traceable to deposit, held superior to right of set-off in the bank."

In the opinion, referring to the three cases above cited, the Court said:

"In each of those cases the bank had actual or constructive notice that the money deposited with it, and absorbed in part satisfaction of the depositor's debt, belonged to some one other than the depositor, and it was held that the equitable owner could follow the fund into the hands of the bank and recover it."

In *U. S. Co. v. Wooldridge,* 268 U. S., 234; 45 S. Ct., 489; 69 L. Ed., 932; 40 A. L. R., 1094, it is held that the right of a depositor is simply to share with other unsecured depositors in the assets of an insolvent corporation. It

stands to reason that, when a depositor comes into the possession of a part of such assets, to which all the other depositors have as much right as he, in a greater or less degree, he should not be allowed to appropriate, and apply to his particular claim, the whole of what he has received.

In *Wagner v. Bank,* 122 Tenn., 164; 122 S. W., 245; 28 L. R. A. (N. S.), 484; 135 Am. St. Rep., 869; 19 Ann. Cas., 483, it was held that, where the assets of an insolvent corporation were deposited in a bank, which was one of the creditors of the corporation, under an agreement between the bank and the creditors that the assets should be collected and deposited in the bank, to be divided among all creditors *pro rata,* the bank receiving the deposits under these conditions could not set off its own claim against its liability for the fund so deposited, since the fund was a trust deposit for specific purposes, created with the knowledge and consent of the bank, and could not be treated as the individual property of the corporation. (The legal obligation upon the Barnwell Bank, to treat the deposit as a trust fund for all the creditors, was as binding as if it had made an express agreement to that effect.)

Mr. Justice Stabler observes:

"It is not contended that at the time the Receiver's deposit of $7,000 was made, the Barnwell Bank could have offset its claim against the insolvent Columbia Bank to any extent whatever against such deposit. Clearly, if such contention were made, it could not be sustained. *The making and receiving of the deposit carried with it an implied agreement * * * that the Barnwell Bank would not make such application of the deposit, but that, in accepting same, it recognized the Receiver's right to its control. Otherwise, it would not have been a deposit, but a payment to the Barnwell Bank, as a preferred creditor, of a part of its claim against the Columbia Bank, which would not be allowed.*"

The part underscored by me is exactly in line with, and practically a quotation from, the *Akin case* (Tenn. Ch.),

35 S. W., 569, and is the touchstone of this inquiry, entirely correct.

That which is condemned is precisely what the opinion permits the Receiver of the Barnwell Bank to do: To force an application of the $7,000 deposit to the $13,000 claim of the Barnwell Bank against the Columbia Bank, and to allow the Receiver of the Barnwell Bank a dividend upon the $6,000 balance. In other words, it permits the Receiver of the Barnwell Bank to do what it is conceded that the Barnwell Bank could not have done; in the face of the law that the rights of the Receiver are commensurate with the rights of the bank, *at the time the deposit was made.*

Further it is observed, referring to the $7,000 deposit:

"At that time the Barnwell Bank knew of the insolvency of the Columbia Bank, and that Mr. Peurifoy was acting as Receiver of its assets; and when it received the deposit of $7,000, *it knew that such a deposit was a trust fund, designed to be finally distributed ratably among the creditors of the insolvent Columbia Bank, of which number it was one. The fact that this deposit was a trust fund, and known to the Barnwell Bank to be such, would not in any way affect its status as a deposit. It was entitled to the same standing and consideration as any ordinary deposit; that it had the earmarks of a trust fund did not give it any* special protection." (Italics added.)

I do not think that this is the law. When Peurifoy was appointed Receiver, the title to the assets of the Columbia Bank vested in him as a trustee for all the creditors. As well say that when A, a debtor personally of a bank, deposits with the bank trust funds, in his name as trustee, the bank, upon the insolvency of A, may appropriate the trust funds by applying them to the personal obligation of the trustee.

Further it is observed:

"Under the circumstances disclosed, the creditors of the Barnwell Bank, when it became insolvent, had such rights,

under the new status thus created, as a Court of equity will not disregard. * * * Certainly the plan contended for by the respondent would work an injustice to the creditors of the insolvent Barnwell Bank, which a Court of Equity should not permit."

The creditors of the Barnwell Bank certainly had no greater interest in this trust fund than the bank had. The Receiver stepped into the shoes of the bank, and he had no higher rights than it. It is conceded that the bank had no right to divert the trust fund to its claim against the Columbia Bank. The "new status," created by the insolvency of the Barnwell Bank certainly could confer no higher rights than theretofore existed. In what respect, then, an injustice could be inflicted upon the creditors of the Barnwell Bank by withholding from them participation in a trust fund to which the bank was never entitled is beyond my comprehension.

As a practical matter, it does not make a particle of difference, so far as results are concerned, whether the Court should determine either that the Receiver of the Barnwell Bank must account to the Receiver of the Columbia Bank for the full amount of the deposit of $7,000 or that the Receiver of the Columbia Bank is entitled to set off the $7,000 deposit against the *dividends* that may be declared upon the deposit claim of the Bank of Barnwell.

The real contention of the Receiver of the Barnwell Bank is that he is entitled to set off the whole of the claim of the Barnwell Bank against the $7,000 deposit. This cannot be, for the reasons stated. He may be allowed to set off the *dividends* which may be declared payable on that claim, but not the entire claim, for the entire claim and the deposit do not constitute mutual demands.

The objection that there can be no set-off in favor of the Receiver of the Columbia Bank of the $7,000 deposit against the dividends, for lack of mutuality, cannot be sustained, for the obvious reason that the dividends are or will be due

from the Receiver of the Columbia Bank to the Receiver of the Barnwell Bank and the $7,000 deposit is due by the latter Receiver to the former; answering every requirement of mutuality.

It appears in the evidence that some 40 banks, throughout the State, received the same consideration that the Barnwell Bank received.    Thousands of dollars were placed in their hands by the Receiver of the Columbia Bank, upon precisely the same terms.    All of it came from the treasury of the Receiver, assets of the trust estate.

If the Receiver of the Barnwell Bank should be allowed to appropriate the $7,000 deposit, apply it to the $13,000 deposit claim, and elevate his piggin for the dividends upon the balance, there is no reason why the other 39 banks may not do the same; the effect of which, as readily may be seen, would be an astounding depletion of the assets distributable among the ordinary depositors.    The banks which had been thus *accommodated* by the Receiver would profit immeasurably over the others by the application of which is regarded *the equity of their creditors.*

Another consideration of moment is this:    The logical result of the majority opinion is that Peurifoy, as Receiver, was guilty of negligence in depositing with the banks which had deposit credits in the Columbia Bank the trust funds of the estate which he was administering.    If the Barnwell Bank has the right to set off its claim of $13,000 against its liability for the $7,000 deposit, it is clear that $7,000 which belonged to *all* of the creditors has been dissipated by the act of Peurifoy in making that deposit in the Barnwell Bank which had a claim against the defunct Columbia Bank.    Can any one entertain such a suggestion for a moment?    Shall Peurifoy's commendable purpose in making *advance payments* of the dividend to be declared, for the convenience of the depositing banks, which he had the legal right to do, be held against him as a ground of personal liability?    The exact question arose in the *Iowa case*

above cited, *State ex rel. Carroll v. Bank*, 128 Iowa, 597; 105 N. W., 159, which decided that the Receiver had the right to deposit estate funds in a bank which had a claim against the insolvent, and that the bank had no right to set off its claim against its liability to the Receiver for the deposits.

My insistence upon the correctness of my conclusions, which may lay me open to the charge of *persistence,* may, I think, be justified by an illustration, hypothetical, which is liable to be presented at any time in the settlement of estates in the hands of Receivers or of assignees for the benefit of creditors: Suppose a merchant in failing circumstances should make an assignment for the benefit of creditors, and the assignee should, as he ought, immediately convert the estate into cash. He happens to deposit the proceeds of the assigned estate in a bank which holds a note against the insolvent merchant. Would it be contended for a moment that the bank has the right to apply such proceeds, trust funds deposited with it, to be prorated among the creditors, to the payment for its note? I hardly think so; and, if the bank happened to go into the hands of a Receiver shortly afterwards, could it be maintained that the creditors of the bank had been positively benefited by its insolvency to the extent of conferring a right upon the Receiver of the bank which the bank did not have?

The Court is informed by a petition and brief, filed by permission of the Court, of a pending case which will be greatly affected by the majority opinion in the case at bar, and which emphasizes its importance and far-reaching consequences, and furnishes a vivid illustration, as I see it, of the fallacy of the opinion. I make use of it simply by way of illustration.

The facts appear to be as follows: Lee C. Holleman died June 22, 1921, leaving a will. He was president of the People's Bank of Anderson, and owed the bank unsecured obligations amounting approximately to $100,000, and

similar obligations to others of like amount. On July 18, 1921, the executrix collected life insurance to the amount of $50,000, $25,000 of which was deposited in the bank to her credit as executrix. The insurance money is practically the entire estate, subject to the claims of unsecured creditors. On June 27, 1922, the action was brought to marshal the assets and settle the estate. On January 5, 1923, the People's Bank suspended, and went into liquidation under the statute.

If the principles announced in the majority opinion in the case at bar should prevail, the Receiver (or other liquidating agent) of the bank would have the right to set off its $100,-000 of notes given by the testator to the bank against the deposit credit of the executrix of $25,000, leaving its claim, $75,000, upon which it would receive dividends from the insolvent estate of the testator, diminishing the available assets of the estate to that extent, and leaving only $25,000 for distribution among the unsecured creditors, the Receiver participating in that distribution upon its reduced claim, amounting to $75,000.

On the other hand, if the view for which I contend should prevail, the $25,000 on deposit would be considered a part of the trust fund of $50,000. In the hands of the executrix (or the administrator d. b. n. c. t. a. who has succeeded her), for all unsecured creditors, the bank included with its claim of $100,000 *pro rata*. It is possible, under the peculiar circumstances of that case, that the adjustment above indicated should be made upon a slightly different basis, but I think it is perfectly clear that the bank would not have the right to wholly absorb the deposit and come in for a *pro rata* distribution with its claim for the balance.